20791.  LEDFORD *v.* THE STATE.

CANDLER, Justice.  William Hoyt Ledford was indicted in Polk County for the murder of Virgil Glenn Gray, Jr.  He was tried, convicted of the offense charged in the indictment without a recommendation for mercy, and was sentenced to be electrocuted.  He moved for a new trial, basing his motion on the usual general grounds and subsequently amended it by adding several special grounds.  His amended motion for new trial was denied, and the exception is to that judgment. *Held:*

1. Before being arraigned for trial, the defendant filed a motion to quash the indictment on the ground that it was null and void because it was found and returned as true by the grand jury without sufficient evidence to authorize the charge contained therein.  After hearing evidence in support of and against the motion, the court denied it, and one of the special grounds of the motion for new trial alleges that such judgment is erroneous and requires a reversal of the judgment refusing to grant a new trial.  There is no merit in this position since this ruling cannot properly be raised in a motion for new trial; but such ruling, if insisted on, should have been directly excepted to in the bill of exceptions since it relates to an attack on the legal sufficiency of the indictment. *Seymour v. State,* 210 *Ga.* 21 (1) (77 S. E. 2d 519), and the several cases there cited.

2. Special grounds 16, 22 and 23 of the motion for new trial have been expressly abandoned in the brief filed in this court for the plaintiff in error and for that reason they will not be considered.

3. Before the introduction of evidence began, the defendant invoked the rule of sequestration of the witnesses as provided for by Code § 38-1703.  The solicitor-general then requested the court to permit Sergeant Bernard Young, a member of the Arkansas Police Department and a witness for the State, to remain in the courtroom during the trial to assist him in the prosecution of the case, stating as his reason for such request that he (the witness) had participated in the investigation of the case more than any other officer.  Whereupon counsel for the defendant, as his objection to the request, stated to the court, "We object to some Arkansas officer helping prosecute

this man." The request was granted by the court and this ruling is excepted to in one of the special grounds of the motion for new trial. Respecting the solicitor-general's request, the trial judge had discretionary power to grant or refuse it, and in the circumstances of this case we will not hold that he abused his discretion by permitting the witness Young to remain in the courtroom during the trial for the purpose of aiding the solicitor-general in the prosecution of the case. See *Justice* v. *State*, 213 *Ga.* 166 (97 S. E. 2d 569), and the cases there cited which include *Poultryland, Inc.* v. *Anderson*, 200 *Ga.* 549, 562 (37 S. E. 2d 785), where it was said by a full bench that "the rule as fixed by the Code of 1863 (§ 3787) and continued in all subsequent Codes, as to the sequestration of witnesses, conferred upon the party making such request an absolute right, subject only to the sound discretion of the trial judge in permitting one or more witnesses to remain in the courtroom to advise the opposite party in the presentation of his case. . ." Accordingly there is no merit in this special ground.

4. The solicitor-general in outlining his case to the jury stated that he expected to prove by evidence that "the defendant was arrested in Oklahoma by Federal authorities on a complaint charging him with taking an automobile across the state line." At this point counsel for the defendant moved for a mistrial on the ground that the statement of the solicitor-general placed the character of the accused in evidence when he (the accused) had not first elected to do so. As to the motion for mistrial, the court said: "Gentlemen of the jury, counsel for the defendant has made a motion for a mistrial on account of certain remarks that counsel for the State made. I instruct you that counsel is merely making a statement of what he expects to prove in the case. That is not evidence until it is proven. You will disregard any statement with reference to any other crime, and consider only the evidence in this case and base your verdict thereon. What counsel states in his opening statement, or any statement, is merely what he contends is the evidence or reasonable deductions drawn therefrom. So, you will disabuse your minds of anything that has been said and not consider it in making your verdict, and in the last analysis you make your verdict based on the evidence in the case. I overrule the motion with that

explanation." In view of the court's instruction to the jury, we hold that he did not err in refusing to grant a mistrial. Hence the special ground which complains of this is not meritorious.

5. While the Sheriff of Polk County, John Redding, was testifying as a witness for the State, he was, over objection of the defendant, permitted to read to the jury a statement which the accused had dictated to him and which recites: "I have made this statement freely and voluntarily, without any hope of reward or benefit or fear of punishment" and the statement speaks of a trip north of Cedartown, Georgia, which the accused had made that day (October 16, 1958) with Sheriff Redding and it recites that the place to which they had gone together was the spot where Virgil Glenn Gray, Jr. was killed. It also recites that the place to which they went on that day was the spot about two miles north of Cedartown, Georgia, as mentioned in a written statement he (the accused) made to a certain officer in Oklahoma City, Oklahoma. The witness Redding testified that the written statement which the accused dictated to him was freely and voluntarily made, without any hope of reward or fear of punishment, and that the spot pointed out to him as being the place where the deceased Gray was killed was in Polk County, Georgia. The statement was signed by the accused and witnessed by Sheriff John Redding, Dan Winn and James H. Hines. The statement was objected to "on the ground that the subscribing witnesses . . . Dan Winn and James H. Hines have not identified the statement, neither has the State accounted for their absence." The statement was also objected to on the ground that the taking of it by Sheriff Redding without first apprising the defendant of his right to counsel was a denial of his right to have the assistance of counsel in violation of Article VI of the amendments to the Constitution of the United States and was also a denial of the privilege and benefit of counsel guaranteed by Article I, Paragraph V of the Constitution of Georgia. These objections are without merit, and the special grounds of the motion for new trial which complain of them show no error.

6. Weldon Gentry, a witness for the State, was permitted by the court to read to the jury a written statement which the accused made to him and another agent of the Federal Bureau

of Investigation, except the following part of it which the court ordered him not to read: "I was released from the Federal Prison, Atlanta, Georgia, on September 30, 1958. My number in prison was 76160, and I was doing five years for robbing a mail clerk of his pistol. After release. . ." The part thereof as read to the jury by the witness being: "I, Hoyt Ledford, give the following voluntary signed statement to Daniel J. Maloney and Weldon C. Gentry who have identified themselves to me to be Special Agents of the Federal Bureau of Investigation. I have been told I do not have to give or make a statement; that I am entitled to a lawyer; and that anything I say can be used against me in a court of law. My name is W. Hoyt Ledford, I am 43 years old and my residence is Chatsworth, Georgia. On 9-30-58, I went to the Piedmont Hotel in Atlanta and rented a room and told the bell boy to send a prostitute up to my room. Susan Jeffries came to my room. I later learned her name was Lorraine Stanga. She and I became friendly during the week of September 30, 1958, and I stayed at her apartment on Thursday and Friday nights of that week. During this week Stanga told me she was on parole from some city in Arizona on check charges and that she had a plan to make some money. Stanga stated to me that she had been dating a man named Virgil Glenn Gray who had an automobile and carried a big roll of money. She said we could rob and kill Gray, and take his car and he wouldn't be missed for some time as he was a traveling man. Stanga and I then planned for her to have a date with Gray on Saturday night October 4, 1958, in his car. After the date she was to bring Gray by her apartment where I would be waiting and we would then pull the robbery. On Saturday Gray called Stanga and they were to go to dinner at 5 or 6 p.m. Gray came by and Stanga went out to the car and got in before Gray had a chance to come in. Later in the evening Stanga called me at her apartment and said she and Gray would come to the apartment at about 9 p.m. At about 9 p.m. a car came up to the apartment and stopped. Stanga and Gray came in and I was hid behind the door. I had earlier in the evening purchased a 38-caliber revolver. As they came in I pulled this gun and told Gray to do as he was told and he wouldn't get hurt. Gray wheeled and drew back his fist and I hit him on the side of his head with the gun. We

then got in Gray's car. Stanga was driving, Gray was in the front seat and I was in the rear seat behind Gray. We drove out on a country road where we robbed Gray. I hit him once or twice on the head with my gun on the way out. After stopping the car, Stanga searched Gray's pockets on her side as we sat in the car and I searched his right side. He only had $21 which we took, along with his wallet, wrist watch and rings. We later threw the rings and watch away in streams we crossed. After searching Gray we opened the trunk lid and forced Gray to crawl in the trunk and we closed the lid. Before closing the trunk I hit Gray again with the gun and knocked him out. We then went to my room and picked up my luggage and clothing; went to her room where we also got Stanga's bags and clothes and started towards Cedartown, Georgia. In Cedartown a police car pulled alongside and told us our tail lights were out. Stanga told him she would stop at the next station and fix them. We could hear Gray moving in the trunk and he would moan every once in a while. Stanga remarked that we had better finish him off. Stanga pulled off on the shoulder of the road at a spot where there were no houses. She unlocked the trunk then took the keys and re-started the motor. She came back to the rear. I was going to use the 38 revolver but Stanga handed me a 25-caliber automatic and said I had better use it as it wouldn't make so much noise. She then grabbed Gray's head and turned it so that the side of the head was to me. I shot Gray twice in the head with the 25-caliber automatic. I handed this gun to Stanga and she put it in her purse. We then drove west through Tennessee and after driving the rest of Saturday night and all day Sunday we stayed at a tourist court in a small town in Arkansas near the Ozark Mountains. Stanga had told me there was many places in these mountains to hide the body. We turned off near some lakes and we drove on a dirt road over a mountain, White Mountain, I believe, and on a dirt side road after passing the crest of the mountain we pulled off and dumped the body of Gray. It took both of us to get the body out as rigor mortis had set in. We then drove to a town about 80 miles east of Oklahoma City where we stayed at a tourist court Monday night. Stanga had told me that she had a stepbrother named Cecil in Oklahoma City, so on Tuesday morning, October 7, 1958, we drove to Okla-

homa City. We went to his home but Cecil's wife said he was at work. We then went to a garage where Cecil works but he could not get off work till noon. I stayed in the car while Stanga went into the garage and talked to Cecil. We then drove around trying to locate a place to eat when we were arrested by the Bethany police. While on this trip at the tourist courts Stanga always went in and rented the room while I stayed in the car. Stanga always carried her 25-caliber automatic on this trip and I carried the 38-caliber revolver. Stanga drove and I rode in Gray's 1958 four-door Ford from College Park, Georgia, to Oklahoma City, Oklahoma, knowing this car to have been taken from Gray by force and without his permission. The above car bore 1958 Georgia license plate 20-8904. I have read the above statement consisting of seven handwritten pages, and it is true. I have initialed the first six pages and signed page seven. Signed W. Hoyt Ledford. Witnesses: Weldon C. Gentry, Special Agent, F. B. I., Oklahoma City, Oklahoma. Daniel J. Maloney, Special Agent F. B. I., Oklahoma City, Oklahoma. 10-8-58." Special ground 7 of the motion for new trial alleges that the court erred in not permitting the witness Gentry to read that part of the defendant's statement which is quoted above on the ground that it permitted an incomplete statement to go before the jury for their consideration and allowed the State's counsel to offer in evidence only such portion of the defendant's statement as they chose. We see no conceivable error in this: but even error without injury does not require the reversal of a judgment. Special ground 8 of the motion for new trial alleges that the court erred in overruling movant's motion for a mistrial which was made when the witness Gentry read to the jury the following portion of the above quoted statement, to wit: ". . . Stanga drove and I rode in Gray's 1958 four-door Ford from College Park, Georgia, to Oklahoma City, Oklahoma, knowing this car to have been taken from Gray by force and without his permission. The above car bore 1958 Georgia license plate 20-8904." His motion for a mistrial was based on the ground that this portion of his statement "was material, prejudicial and hurtful" to him because it placed his character in issue when he had not first elected to do so. Since the statement complained of in this special ground was made by the accused as a part of

his alleged confession, the contents of which the witness Gentry was reading to the jury, and as such was admissible, it afforded the accused no valid ground for his mistrial motion. *Calhoun* v. *State,* 210 *Ga.* 180 (78 S. E. 2d 425) ; and *Charlton* v. *State,* 214 *Ga.* 778 (107 S. E. 2d 840). "It is no valid ground of objection to the admission in evidence of an incriminatory statement or confession made by the accused in a criminal case that the language indicated that the accused had committed also another and separate offense. *Watts* v. *State,* 8 *Ga. App.* 694 (2) (70 S. E. 46) ; *Lampkin* v. *State,* 145 *Ga.* 40 (88 S. E. 563) ; *Swain* v. *State,* 162 *Ga.* 777 (2) (135 S. E. 187)." *Reed* v. *State,* 197 *Ga.* 418 (6) (29 S. E. 2d 505).

7. S. N. Gaston, a witness for the State, was permitted by the court to read a written statement which the accused made and signed in his presence on October 20, 1958, and which he (the witness), L. P. Moss and E. G. Pepper signed as witnesses, except the following part of it: "On September 30, 1958, I was discharged from the Federal penal system in Atlanta. I had received $90 or more from the prison. They sent me to the probation officer. I got this check, $825, and got it cashed. I then went back to the Piedmont Hotel. I got a bell boy and gave him a sales slip for my clothes to pick up by 4 p.m., for I had to report to the probation officer." The portion of the defendant's statement which the court permitted the witness Gaston to read to the jury over the defendant's objection, is in all material respects like that part of the defendant's statement which the State's witness Weldon Gentry read to the jury. As to that part of the defendant's statement which the witness Gaston read, the defendant's counsel made and urged the same objections to the reading of it which were made and urged to the statements which Sheriff John Redding and Agent Weldon Gentry were permitted to read, and since we have held that the court did not err in overruling them as to those two statements, we make the same ruling as to that portion of the defendant's statement which the witness Gaston read. Hence, the special grounds of the motion which complain of this are not meritorious.

8. Special grounds 17, 18 and 19 of the motion for new trial allege that quoted excerpts from the court's charge on the issue

of insanity are erroneous and require a reversal of the judgment refusing to grant the defendant a new trial. Special ground 17 alleges that the court had instructed the jury in this case that a person is not responsible for acts which would otherwise be criminal when he does not possess sufficient mental capacity to distinguish between right and wrong in relation to the act about to be committed by him, and that it was confusing, misleading, and therefore erroneous for the court to also give the following instruction: "The law does not attempt to measure the degree of insanity which renders a man or a woman legally irresponsible for his or her acts. That is a question of fact for you to determine." As authority for his contention respecting this special ground of the motion, movant cites and relies on *Caison* v. *State*, 171 *Ga.* 1 (154 S. E. 337) ; *Geer* v. *State*, 184 *Ga.* 805 (193 S. E. 776) ; *Bryant* v. *State*, 191 *Ga.* 686 (13 S. E. 2d 820) ; and *Reece* v. *State*, 210 *Ga.* 578 (82 S. E. 2d 10). In all of those cases a charge like the one here complained of was held to be erroneous for the reason, as there given, that the law does fix the degree of insanity which renders a person irresponsible for his acts, and the State's motion to review and overrule them is expressly denied. Accordingly, this special ground of the motion for a new trial is meritorious. Special grounds 18 and 19 complain about other portions of the court's charge on the subject of insanity but when the parts so complained of in these special grounds are considered in connection with the whole charge on that subject, we hold that they are not subject to the criticism lodged against them. Hence there is no merit in these two special grounds of the motion.

9. Under the facts of this case there is no merit in the contention that the court erred in charging on the law respecting confessions of guilt. *Owens* v. *State*, 120 *Ga.* 296, 299 (48 S. E. 21) ; *Ford* v. *State*, 202 *Ga.* 599 (4) (44 S. E. 2d 263) ; *Pressley* v. *State*, 201 *Ga.* 267 (1) (39 S. E. 2d 478) ; *Weatherby* v. *State*, 213 *Ga.* 188 (97 S. E. 2d 698), and the cases there cited; *Adsmond* v. *State*, 47 *Ga. App.* 444, 447 (170 S. E. 525).

10. "It is only in cases where the State relies wholly on circumstantial evidence that Code § 38-109 must be charged without request." *Gentry* v. *State*, 208 *Ga.* 370 (2) (66 S. E. 2d 913). In this case the State did not rely entirely on circumstantial evidence; and this is true since a confession of guilt is direct

evidence of the highest type. *Harris* v. *State*, 207 *Ga.* 287 (2) (61 S. E. 2d 135). Hence there is no merit in special ground 27 of 'the motion for new trial.

11. The verdict is amply supported by competent evidence and has the approval of the trial judge; hence, there is no merit in the general grounds of the motion for new trial.

12. The remaining special grounds of the motion have been carefully examined and they are either without merit or raise questions which will not likely occur on another trial. Hence they will not be specifically dealt with in this opinion.

13. Only for the ruling made respecting special ground 17 of the amended motion is the judgment complained of erroneous.

*Judgment reversed. All the Justices concur.*

ARGUED FEBRUARY 8, 1960—DECIDED MARCH 16, 1960—REHEARING DENIED MARCH 16, 1960.

*James I. Parker, Harold L. Murphy, D. B. Howe,* for plaintiff in error.

*Dan Winn, Solicitor-General, John T. Perren, Assistant Solicitor-General, Eugene Cook, Attorney-General, Rubye G. Jackson, Deputy Assistant Attorney-General,* contra.

HEAD, Presiding Justice. For the reasons stated in my dissenting opinions in *Glustrom* v. *State*, 206 *Ga.* 734 (58 S. E. 2d 534), and *Ramsey* v. *State*, 212 *Ga.* 381 (92 S. E. 2d 866), the motion for rehearing filed on behalf of the State, in my judgment, should have been stricken and disallowed as a part of the record in the present case. It must be conceded that there is neither constitutional nor statutory authority for the filing of a motion for rehearing on the part of the State in any criminal case in this court. The authority of this court to modify, revise, or vacate its judgments within the term is a power vested in the court that is not subject to limitation or expansion at the instance of the Attorney-General or any Solicitor-General of this State. The filing of a motion for rehearing on behalf of the State is not authorized by any concept that this court might, in some instance in the future, make an error in granting to a defendant a new trial. In the more than one hundred years of the existence of this court, no instance is cited wherein this court on its own motion,

or for any other cause, has ever vacated a judgment granting a defendant a new trial in a criminal case and substituted a judgment denying a new trial. I am authorized to say that Mr. Justice Almand and Mr. Justice Quillian concur in this view.