## A95A2417. HALE v. THE STATE.
(469 SE2d 871)

ANDREWS, Judge.

Harry Eugene Hale appeals from the judgment entered on his conviction of three counts of forgery in the first degree based on unauthorized use of the credit card of Christoph Zahn, who disappeared in Atlanta in the spring of 1992. We affirm.

1. Viewed so as to support the jury's verdict, the evidence showed that Zahn, a 21-year-old student who lived in Switzerland but held joint Swiss-American citizenship, embarked on a tour of the United States in September 1991, staying with numerous friends. Zahn did not like alcoholic beverages and did not drink, except for an occasional glass of wine with dinner at home. Zahn also did not drive or have a driver's license. He had a MasterCard with him for expenses. He stayed over the Christmas holidays with the Van Nordens of St. Simon's Island until January 1992, when he continued touring. Zahn kept in touch with the Van Nordens by phone and letter from then until April, when the contact ceased. The last known contact by Zahn with anyone was a telephone call from Atlanta on April 29 to his travel agent, verifying plans for a bus trip of national parks, leaving from Atlanta. In May, the Van Nordens notified Zahn's mother in Switzerland that they had lost contact with Zahn. She also had not heard from him after receiving letters from him in April and a telephone call that month telling her he was returning two days early. His prepaid plane ticket was never used or cashed in. Zahn was reported missing in May and, in August 1992 after the police had not found him or any leads, Mrs. Zahn, through the Van Nordens, hired Select, Inc. of St. Simon's, a private investigation firm composed of former federal agents, to search for her son.

Select's Richard Jones, former Secret Service agent and instructor at the Federal Law Enforcement Training Center, obtained a number of credit card receipts for Zahn's MasterCard and other documents bearing his purported signature from numerous Atlanta area businesses, including three in Cobb County — a charge slip for food and beverage at Bimbo's Saloon & Eatery on April 30, 1992 (Count 1), a Red Roof Inn guest registration card for May 2, 1992 (Count 2), and a charge slip for Minks Package Store on May 7, 1992 (Count 3). Jones obtained from Minks the security videotape for May 7 and, by matching the cash register receipt with the charge slip, was able to find a picture of a white male, slightly balding, using the Zahn MasterCard. Zahn had a full head of long brown hair, over his shirt collar. This was the first lead obtained and Jones had photos of the man made from the videotape. The photos were taken from overhead and the side of the man using the card.

Jones also obtained a motel receipt from a Carrollton motel,

showing a room rental in May in Zahn's name. He determined that three phone calls were made from that room, including two local calls traced to Musick and Turner, two local teenagers. Talking to these young men, Jones discovered that they had met a man using the name "Christoph" while on a visit to Cumberland Mall in the spring of 1992. They said he had a "funny accent" and told them he was from Switzerland. They talked with him for about 15 minutes and gave him their phone numbers.

Law enforcement authorities from Cobb and Carroll Counties and the GBI were contacted and the two young men were brought to Atlanta on October 13 in order to prepare a composite drawing of the man they met. Further investigation identified Hale and, on January 6, 1993, the two men were shown a photo spread from which each separately identified Hale as the man they met at the mall.

On February 2, 1993, Cobb County Deputy Janes and another Cobb Deputy, along with GBI agent Cox and Select's Jones, went to Floyd County, Kentucky in an effort to find Hale and to obtain a search warrant for his residence there. While they were unable to find Hale, Floyd County Sheriff Thompson, based on a five-page hand-written statement of Deputy Janes summarizing the investigation, portions of which he independently verified, signed the affidavit and a search warrant for Hale's home was issued. Found in Hale's bedroom during that search were Zahn's camera bag, with his handwritten name tag partially obliterated by a black marker, his two cameras, and an Amish quilt which Zahn had purchased in Pennsylvania for his mother. Also taken by the officers were numerous canceled checks and a handwritten two-page letter bearing the signature "Harry E. Hale" or "Harry."

Handwriting expert Anthony opined that the "C. Zahn" signatures on the charge slips and registration card exhibited significant similarities to the known writings of Hale. Further, he opined that the signatures did not match Zahn's known writing, including his signature on the camera bag brought up by the lab.

The evidence was legally sufficient. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Hale's first enumeration is that the court erred in admitting testimony "derived directly from items seized pursuant to a search warrant which was lacking in probable cause and was illegally executed."

(a) On the issue of probable cause for the issuance of the search warrant, this Court "can consider all relevant evidence of record, wherever located, including that adduced at a suppression hearing before trial and that adduced during trial. [Cit.]" *Garcia v. State*, 207 Ga. App. 653 (1) (a) (428 SE2d 666) (1993); *Clark v. State*, 217 Ga. App. 113, 114 (1) (456 SE2d 672) (1995); *Maxwell v. State*, 211 Ga.

App. 73 (438 SE2d 389) (1993). Further, "the trial court's decision, express and implied, as to credibility and disputed questions of fact at a suppression hearing must be accepted on appeal unless clearly erroneous. [Cits.]" *Garcia*, supra at 654.

(b) Although Hale argues here that the evidence is not clear as to whether or not the five pages of handwritten notes by Deputy Janes were attached to the affidavit signed by Sheriff Thompson, equivocation, if any, on this matter was resolved below in favor of the State and we do not find this decision clearly erroneous. Id.; see *Williams v. State*, 193 Ga. App. 677, 678 (388 SE2d 893) (1989).

(c) Hale also contends that the information supporting the warrant was stale.

Under the standard of *Illinois v. Gates*, 462 U. S. 213 (103 SC 2317, 76 LE2d 527) (1983), adopted by Georgia in *State v. Stephens*, 252 Ga. 181, 182 (311 SE2d 823) (1984), probable cause means "reasonable grounds" and " 'is that apparent state of facts which seems to exist after reasonable and proper inquiry.' [Cit.]" Id. "[T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Stewart v. State*, 217 Ga. App. 45, 46 (456 SE2d 693) (1995).

" 'Time is assuredly an element of the concept of probable cause. (Cit.) However, the precise date of an occurrence is not essential. Rather, the inquiry is as to whether the factual statements within the affidavit are sufficient to create a reasonable belief that the conditions described in the affidavit might yet prevail at the time of issuance of the search warrant. (Cit.)' *State v. Luck*, 252 Ga. 347 (312 SE2d 791) (1984)." *Miller v. State*, 195 Ga. App. 89, 90 (2) (392 SE2d 334) (1990).

Hale contends that, since the warrant was not issued until February 1993 and the fraudulent use of the credit card was in April and May 1992, the information presented in the affidavit and Janes' summary was stale.

Here, because of the nature of his trip, Zahn was not known to be missing until late May, after the fraudulent use of his credit card, and it took several months more to find any clue to the identity of the man using it. Unsuccessful attempts to find Hale continued until the Kentucky address was discovered and the warrant obtained. It cannot be said that the lapse of time here made the information stale. *Holden v. State*, 202 Ga. App. 558, 560 (2) (414 SE2d 910) (1992); *Miller*, supra (lapse of 95 days between occurrence of crime and discovery of it did not make information stale). Also, here, the pattern of use of the MasterCard, 31 known uses in April and May, indicated an

ongoing pattern, rather than an isolated incident. See *Betha v. State*, 192 Ga. App. 789, 790 (2) (386 SE2d 515) (1989); *Midura v. State*, 183 Ga. App. 523, 525 (4) (359 SE2d 416) (1987).

(d) Alternatively, Hale argues that, even if properly issued, the execution of the warrant was illegal because private papers were seized, including a two-page handwritten letter. OCGA § 17-5-21 (a) (5) & (b).

While Hale is correct that the warrant did not specifically list as items sought the "writings" of Hale, it did request a warrant to seize "property or things consisting of evidence which tends to show that a crime has been committed or that a particular person has committed a crime." Seizure of such evidence, even if not specifically listed in the warrant, is not improper. *Banks v. State*, 262 Ga. 190, 192 (4) (415 SE2d 634) (1992). There can be no question that handwriting of the suspected perpetrator is potential evidence concerning forgery.

The private papers referred to by OCGA § 17-5-21 are restricted to those covered by an applicable privilege. *Sears v. State*, 262 Ga. 805, 807 (3) (426 SE2d 553) (1993). Here, the contents of the letter written by Hale to his wife were not used in any way against him and only the characteristics of the handwriting contained in the letter were used by the handwriting expert for comparison purposes. Such use did not violate Hale's rights. *Lowe v. State*, 203 Ga. App. 277, 279-280 (1) (416 SE2d 750) (1992).

3. Hale's third enumeration complains of reference during the trial to the disappearance of Zahn. The only objection made at trial concerning character evidence was to the introduction of State's Exhibit 6, a copy of Hale's Carroll County conviction of financial transaction card fraud.

" 'Where an entirely different objection is presented on appeal, we cannot consider it because this is a court for review and correction of error committed in the trial court. It is well established that appellate courts may not consider objections to evidence not raised at trial.' [Cit.]" *Nelson v. State*, 210 Ga. App. 249 (2) (435 SE2d 750) (1993).

4. In his fourth enumeration, Hale contends that the in-court identification of Hale by Musick and Turner and the photo spread identification by both were improperly tainted by private investigator Jones' previous display to them of the surveillance photo, State's Exhibit 3. This is alleged to have occurred in Atlanta when the two men were taken in to work with a police artist on a composite drawing of the man they met at the mall.

Pretermitting the question of whether use by the private investigator of the less than clear surveillance photo, taken from above, constituted an "impermissibly suggestive" display and the fact that neither Musick nor Taylor had any recall of such a display, we find that this use of the photo did not constitute a " ' "substantial likeli-

hood of irreparable misidentification." [Cit.]' " *Baines v. State*, 201 Ga. App. 354, 357 (4) (411 SE2d 95) (1991). The photo spread was not shown to the men until January 1993 and there has been no showing that the surveillance photo in any way tainted the identification made from it.

There was no error in admitting the photo spread and in-court identification of Hale.

5. The fifth enumeration complains of evidence admitted at trial that was derived from documents "obtained through illegal use of grand jury subpoenas in violation of OCGA § 24-10-26."

The documents referred to in the brief consisted of banking records obtained from Hale's Kentucky bank and then returned to the bank and one issued to Sheriff Thompson in Kentucky for those items seized during the search pursuant to a warrant (Division 2).

There has been no showing that any information was obtained from the bank by this subpoena which added any information to that obtained from Hale's checks seized pursuant to the warrant. Additionally, neither the checks nor other bank documents were introduced into evidence at trial, nor was any testimony connected with them or derived from them introduced. Even assuming error, there has been no showing of harm to Hale. *Vincent v. State*, 210 Ga. App. 6, 7 (2) (435 SE2d 222) (1993).

The evidence seized pursuant to the warrant was transferred to Cobb County authorities by the Kentucky sheriff. Hale contends that use of a subpoena for this purpose was improper. Again, even assuming impropriety, the evidence had lawfully been seized from Hale under the warrant, Sheriff Thompson did not testify during the trial, and the physical evidence was all identified by Deputy Janes and private investigator Jones who were in Kentucky when the evidence was seized. That there may have been a procedural impropriety in the transfer from one jurisdiction to another does not make use of the evidence at trial harmful. *Vincent*, supra; see *Sacchinelli v. State*, 161 Ga. App. 763, 764 (1) (288 SE2d 894) (1982).

6. Finally, Hale contends that he was improperly sentenced as a recidivist under OCGA § 17-10-7 when the Carroll County conviction was still under appeal.

While Hale was indicted as a recidivist, the transcript of the sentencing hearing shows that the court did not consider the Carroll County conviction for sentencing purposes because it was still on appeal. *Dunn v. State*, 208 Ga. App. 197, 198 (4) (430 SE2d 50) (1993). There was no error.

*Judgment affirmed. McMurray, P. J., and Blackburn, J., concur.*

DECIDED MARCH 14, 1996.

*Roderick H. Martin*, for appellant.

*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys*, for appellee.