S96A1980. WILLIAMS v. THE STATE.
(482 SE2d 288)

THOMPSON, Justice.

Ronald Vashon Williams was convicted by a jury of felony murder in connection with the shooting death of Rufus Gordon Smith.[1]

---

[1] The crime occurred on July 6, 1995. Williams was charged on July 28, 1995 in a two-count indictment with malice murder and felony murder with the underlying felony of aggravated assault. The felony murder count was dead-docketed prior to trial. Trial was held on October 16-19, 1995, and Williams was found guilty of felony murder as a lesser included offense of malice murder on October 19, 1995. He was sentenced on the following day to life imprisonment. A motion for new trial was filed on November 7, 1995, amended on May 28, 1996, and denied on June 5, 1996. A notice of appeal was filed on June 27, 1996. The case was docketed in this Court on September 11, 1996, and was submitted for decision on briefs on November 4, 1996.

Following the denial of his motion for new trial, Williams appeals from the judgment of conviction and sentence entered thereon, primarily taking issue with the jury instructions and asserting that he was denied effective assistance of trial counsel. Finding no reversible error, we affirm.

At approximately 3:00 a.m., Williams and co-defendant Dante Weems left their residence at Crescent Hills Apartments armed with a .32 caliber chrome pistol with a black handle, belonging to Weems. At 5:45 a.m., a resident of the apartments observed a group of young men running across the street from the apartments where they appeared to be engaged in a fight. Although it was dark and the witness could not identify their faces, she later described the hair style of one of the perpetrators to her 18-year-old son, who told her that the description fit Weems. At about the same time, another neighborhood resident observed a group of four young men across the street from the Crescent Hills Apartments, beating the victim with their feet and fists and knocking him to the ground as he called for help. That witness saw one of the assailants draw a "shiny" gun, and then heard a shot fired. After observing the four men run into the Crescent Hills Apartment complex, the witness flagged down a police patrol car. Williams and Weems were seen sitting outside the apartment complex across from the crime scene during the police investigation. The victim was an elderly, homeless man who was taking shelter in a shed behind the dry cleaning establishment where he was killed. He died as a result of a single gunshot fired into his neck at a range of about two feet, while he was face down on the ground.

Later in the day of the shooting, Williams disclosed to a friend, "I think we killed this man." Weems bragged to two acquaintances that he shot the victim and that Williams participated by knocking the victim to the ground and going through his pockets.

When police received information that Weems attempted to sell a .32 caliber pistol believed to be the murder weapon, and that Weems, Williams, and other identified suspects were staying in an apartment at the Crescent Hills complex, a search warrant was executed at that location. Pursuant to the warrant, the officers found and seized a .32 caliber pistol used in the crime and another 9 millimeter pistol. Williams, Weems, and three other individuals in the apartment were taken into custody.

After being advised of his *Miranda* rights, Williams executed a waiver of counsel form and made a statement to police, admitting: (1) his presence at the scene; (2) his companions "rushed" the victim and began beating him; (3) he (Williams) "was trying to get a lick or two in"; (4) he and the others had gone through the victim's pockets looking for money but found none; and (5) one of the others shot the victim, whereupon they all ran back across the street to the apartments.

Williams described the weapon as chrome with black tape wrapped around the handle. He was arrested and tried jointly with Weems and another of their companions.

1. The evidence was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), to find Williams guilty of felony murder with the underlying felony of aggravated assault with intent to rob.

2. Williams asserts several challenges to the jury instructions.

(a) In a lengthy charge distinguishing between malice and felony murder, the court instructed: "The primary difference between the offense of malice murder and felony murder is that felony murder does not require malice or the intent to kill." This was followed by an erroneous statement of law that, "felony murder does *not,* however, require that the defendant possess the requisite criminal intent to commit the underlying felony." See *Holliman v. State*, 257 Ga. 209, 210 (1) (356 SE2d 886) (1987) (felony murder *does* require that defendant possess requisite intent to commit the underlying felony). "However, an erroneous charge does not warrant a reversal unless it was harmful and, in determining harm, the entirety of the jury instructions must be considered." *Foote v. State*, 265 Ga. 58, 59 (2) (455 SE2d 579) (1995). And " '[a] mere verbal inaccuracy in a charge, which results from a palpable "slip of the tongue," and clearly could not have misled or confused the jury' is not reversible error." *Gober v. State*, 247 Ga. 652, 655 (3) (278 SE2d 386) (1981), quoting *Siegel v. State*, 206 Ga. 252, 254 (2) (56 SE2d 512) (1949).

The charge as a whole correctly instructed the jury that "intent is an essential element of any criminal case and must be proved by the state beyond a reasonable doubt"; that criminal intent means "to intend to commit the act which is prohibited by statute"; and that the defendant cannot be found guilty "unless you find beyond a reasonable doubt that every element of the offense [as] defined by these instructions was committed." As to the offense of aggravated assault as the underlying felony for felony murder, the court defined an assault, and then charged: "A person commits the offense of aggravated assault when that person assaults another with the intent to rob or with a deadly weapon." In instructing on the intent necessary to commit the underlying felony of aggravated assault, the court correctly charged that it is "necessary that the evidence show beyond a reasonable doubt an intention to commit injury on another person coupled with the apparent ability to commit that injury. . . ." In addition, the court properly instructed the jury on the state's burden of proof, and extensively informed the jury that in order to return a verdict of guilty of any charged offense each element of the crime must be proven beyond a reasonable doubt.

In the present case, the erroneous instruction was corrected on

several occasions as evidenced by the remainder of the charge. Compare *Chamberlain v. State*, 216 Ga. App. 207 (2) (453 SE2d 793) (1995) (where the erroneous charge on reasonable doubt had "a different purpose from the parts of the charge on reasonable doubt that were correctly given . . ."). We are satisfied that the charge as a whole adequately and fairly conveyed the requirement that intent was necessary to commit the underlying felony. Accordingly, we hold that the erroneous statement of law was simply a misstatement or "slip of the tongue," which does not demand reversal. *Whitt v. State*, 257 Ga. 8 (3) (354 SE2d 116) (1987); *Holliman*, supra at (1); *Gober*, supra at (3).

(b) After instructing the jury on the options of malice murder or felony murder with either aggravated assault or robbery by force as an underlying felony, the trial judge went on to charge the lesser offenses of simple battery and simple assault. Williams asserts that the court erred in failing to instruct the jury that these lesser offenses are misdemeanors, which cannot form the basis for a felony murder conviction. The judge clearly instructed the jury which felony offenses could support a felony murder conviction. This was reiterated in a re-charge in response to the jury's inquiry concerning "what other guilty charges are there?" The court again charged all the available alternatives, including the lesser offenses of assault and battery. There was no error in failing to specify that these were misdemeanor grade offenses. Taken as a whole, the charge substantially presented the options in a way not likely to confuse the jury.

(c) Williams asserts that the court erred in failing to instruct the jury on defense of others as justification for Williams' striking the victim, despite the absence of a written request. While the trial court must charge the jury on a defendant's sole defense, even in the absence of a written request, if there is some evidence to support the charge, *Tarvestad v. State*, 261 Ga. 605 (409 SE2d 513) (1991), we find absolutely no evidence in the present case to authorize a charge on the defense of others under OCGA § 16-3-21 (a), or the law of justification under OCGA § 16-3-20.

(d) The court did not err in failing to instruct on voluntary manslaughter, in the absence of a request. *Gadson v. State*, 264 Ga. 280 (2) (444 SE2d 305) (1994); *Comer v. State*, 247 Ga. 167 (275 SE2d 309) (1981).

(e) The court properly and adequately charged the law pertaining to consideration of statements made by Williams or a co-defendant, in conformity with the Council of Superior Court Judges of Georgia, Suggested Pattern Jury Instructions, Vol. II, Criminal Cases, pp. 29-33 (2nd ed. 1991). See *Sands v. State*, 262 Ga. 367 (1) (418 SE2d 55) (1992).

3. Williams asserts that the court erred in failing to grant a new

trial based on ineffective assistance of counsel.

Claims of ineffective assistance of counsel under the Sixth Amendment are evaluated under the two-pronged test set out in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984): The defendant must show that counsel's performance was deficient *and* that the deficient performance prejudiced him, depriving him of a fair trial. *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985).

Williams asserts that trial counsel was ineffective because he failed to object to the admissibility of his custodial statement and failed to challenge the reliability of the affidavit underlying the search warrant. This claim is belied by the record, which demonstrates that the issues were vigorously litigated in both pre-trial and trial proceedings, and were decided adversely to Williams' position.

Williams also claims that trial counsel failed to resolve a per se conflict of interest that arose from his representation of another client, Jasper Glass. It is asserted that counsel had taken a statement from Glass which implicated Williams but exonerated Glass in connection with this prosecution. Any claim of conflict was specifically refuted by trial counsel who testified at the hearing on the motion for new trial that he represented Glass briefly during pre-trial proceedings when the case against him was dismissed; that Williams knew and consented to the relationship; that counsel did not begin his representation of Williams until after Glass was dismissed from the prosecution; and that any statements by Glass were beneficial to Williams.

Since Williams has shown neither attorney error nor prejudice, this enumeration of error is without merit. *Strickland*, supra.

4. Williams asserts that the warrant for the search of his apartment was obtained through a knowing use of false information and that any evidence obtained as a result thereof should have been suppressed.

The affidavit in support of the search warrant that led to Williams' arrest merely stated that an eyewitness described the suspects as four young black males and that a concerned citizen had heard second-hand that the individuals who were later arrested and charged were the individuals involved. The court determined that the totality of information upon which the warrant was based was credible, reliable, and sufficient to support probable cause. The factual findings of the trial court regarding probable cause for the issuance of a search warrant are to be upheld unless clearly erroneous. *Hale v. State*, 220 Ga. App. 667 (469 SE2d 871) (1996). We find no error.

5. It is asserted that the court erred in admitting Williams' custodial statement because his *Miranda* waiver reflects that it was

signed and dated on the day after he gave the statement.

The officer who advised Williams of his rights testified both at a *Jackson v. Denno* hearing and again at trial that: a police stenographer typed the wrong date on the *Miranda* form; the officer advised Williams of his rights prior to taking his statement; and Williams appeared to understand those rights, and executed the waiver *prior to* making the statement. The trial court determined that the inconsistencies were adequately explained by the officers and that there had been a knowing and informed waiver of Williams' rights. Factual and credibility determinations of the trial court after a voluntariness hearing must be accepted by the appellate court unless such determinations are clearly erroneous. *Baldwin v. State*, 263 Ga. 524 (1) (435 SE2d 926) (1993). Moreover, the jury was properly instructed at the conclusion of the evidence that they must find a knowing and voluntary waiver of rights before they were authorized to consider Williams' custodial statement, otherwise they must disregard the statement entirely.

*Judgment affirmed. All the Justices concur, except Fletcher, P. J., and Sears, J., who dissent.*

SEARS, Justice, dissenting.

Because I believe that the majority does not properly apply this Court's precedent concerning the assessment of whether an erroneous jury charge prejudices a criminal defendant's right to a fair trial, I respectfully dissent to Division 2 (a) of the majority opinion. Our precedent dictates that in a criminal prosecution, when a trial court gives an incorrect charge to a jury, such as occurred in this case, a reviewing court must determine whether the erroneous charge was likely to have confused or misled the jury in its deliberations. As explained below, my review of the trial court's charge in this case leads me to the inescapable conclusion that the erroneous charge clearly caused the jury to be confused and misled. Therefore, I believe that the right to a fair trial was prejudiced in this matter, and a new trial should be ordered.

The written transcript of the trial court's charge to the jury in this case is approximately 35 pages long. Early in its charge to the jury, on the fourth page of the written transcript, the trial court instructed that:

> Intent is an essential element of any crime and must be proven by the State beyond a reasonable doubt. Intent may be shown in many ways provided you, the jury, believe that it existed from the proven facts before you. . . . Criminal intent does not mean an intention to violate a penal statute, but means simply to intend to commit the act which is pro-

hibited by the statute.

Later in its charge, on the sixteenth page of the written transcript, the trial court instructed the jury that:

> You may not find the defendant guilty unless you find beyond a reasonable doubt that every element of the offense [as] defined under these instructions, was committed by some person or persons, and the defendant willfully participated in its commission.

Still later in its charge, on the twenty-second page of the written transcript, the trial court stated that:

> an assault is an attempt to commit a violent injury to the person of another. A person commits the offense of aggravated assault when that person assaults another with the intent to rob or with a deadly weapon.

Finally, on the twenty-fourth page of the written transcript, the trial court erroneously charged the jury that:

> the primary difference between the offense of malice murder and felony murder is that felony murder does not require malice or the intent to kill. *Felony murder does not, however, require that the defendant possess the requisite criminal intent to commit the underlying felony.* Aggravated assault may be the underlying felony of a charge of felony murder. Aggravated assault is a felony, and death, although unintended, resulting from such assault may constitute felony murder.

Thus, the jury in this case was, on the one hand, given correct instructions about (1) the general intent element required for every crime charged, and (2) the intent element required for a charge of aggravated assault. On the other hand, however, the jury was given an incorrect instruction that, in a felony murder prosecution, it is not necessary for the State to establish that the defendant intended to commit the underlying felony. The majority reasons that because the trial court gave correct instructions regarding intent in general and intent for aggravated assault, the charge as a whole "fairly conveyed the requirement that intent was necessary to commit the underlying felony," despite the erroneous instruction that in order to find appellant guilty of felony murder, the jury need not have found that he intended to commit the underlying felony. Because this reasoning runs counter to this Court's precedent, I believe that it has led the

majority to the wrong conclusion.

In order to determine whether the right to a fair trial was prejudiced by an erroneous jury instruction, we examine the instruction in conjunction with the entire jury charge.[2] When it appears probable that the erroneous instruction was the result of a simple misstatement or "slip of the tongue," a new trial will not be ordered if, based upon our review of the entire jury charge, "it clearly could not have misled or confused the jury."[3]

For example, in *Gober v. State*, the trial court incorrectly stated while charging the jury that the defendant had pled guilty, when in fact the plea had been not guilty. In assessing whether this "slip of the tongue" required a new trial to be ordered, this Court noted that (1) immediately before the misstatement, the trial court had stated correctly that the defendant had pled not guilty, (2) no less than six times during the jury charge, the trial court instructed the jury that the State carries the burden of proving all elements of the crime charged beyond a reasonable doubt, and (3) during deliberations, the jury had before it a copy of the indictment, which indicated that the defendant had pled not guilty. Based upon these factors, revealed by a review of the entire charge, this Court reasoned that the jurors could not have been misled or confused by the single isolated misstatement, and therefore a new trial was not required.

Similarly, in *Siegel v. State,* the court was faced with a jury charge that instructed if the defendant was found not guilty, he would be given "the benefit of the doubt" and acquitted.[4] The court noted that this erroneous instruction, standing alone, would have mandated a new trial.[5] However, because an examination of the entire charge revealed that the trial court had, at least six times, instructed that the State carries all burdens of proof with regard to the charges against the defendant, and that a defendant comes into court with the presumption of innocence, the single "slip of the tongue" was deemed harmless error.[6]

This case, however, does not involve a single "slip of the tongue" that, when examined in light of the entire jury charge, clearly could

---

[2] *Siegel v. State*, 206 Ga. 252, 254 (56 SE2d 512) (1949); *Chamberlain v. State*, 216 Ga. App. 207, 208 (453 SE2d 793) (1995).

[3] *Gober v. State*, 247 Ga. 652, 655 (278 SE2d 386) (1981) (" 'A mere verbal inaccuracy in a charge, which results from a palpable 'slip of the tongue,' and clearly could not have misled or confused the jury,' is not reversible error"); *Siegel*, 206 Ga. at 254 (a verbal inaccuracy in the jury charge, "resulting from a palpable 'slip of the tongue,' " did not mandate a new trial because it "clearly did not mislead or confuse the jury"); *Chamberlain*, 216 Ga. App. at 208 (when erroneous jury instruction is due to "slip of the tongue," "we must address whether a fair risk exists that the mistake misled or confused the jury").

[4] 206 Ga. at 252.

[5] 206 Ga. at 253.

[6] 206 Ga. at 253-254.

not have misled or confused the jury. The jury charge in this case, when examined as a whole, does not reveal an abundance of correct instructions regarding the intent element of felony murder. *In fact, no correct instruction regarding the intent element of a felony murder charge was ever given to the jury in this case.* Thus, there is no profusion of correct charges in this case to counterbalance the erroneous charge, as existed in *Gober* and *Siegel.* Rather, this case involves a correct charge regarding general intent, a correct charge regarding intent for a charge of aggravated assault, and an incorrect charge regarding the specific intent necessary for a felony murder conviction. Under this scenario, it is entirely possible that a jury could believe that while intent generally is a necessary element to a crime charged, an isolated exception to that rule exists where felony murder is concerned. Obviously, a jury that understood its charge in this manner would be incapable of rendering a fair verdict as to the felony murder charge, and a new trial should be ordered.[7]

Finally, I note that the authority cited by the majority does not support its ruling. In *Whitt v. State*, the trial court, due to a "slip of the tongue," erroneously charged that the State was not "required to prove . . . guilt . . . beyond all reasonable doubt, but [was] required to prove beyond a reasonable doubt." This Court found no reversible error, because the charge as a whole properly informed the jury of the State's burden of proof.[8] The same cannot be said in this case, of course, because a proper charge regarding the intent necessary for felony murder never was given to the jury. Similarly, *Holliman v. State* concerned an ambiguous statement made in recharging the jury, and the ambiguity was easily resolved by the correct charge, which had been given several times to the jury.[9]

In conclusion, I believe it is beyond any reasonable doubt that the erroneous charge in this case, when examined in conjunction with the entire charge, could only have caused the jury to be confused and misled. I therefore believe that the right to fair trial was compromised in this case, and that a new trial should be ordered. For that reason, I respectfully dissent to Division 2 (a) of the majority opinion.

I am authorized to state that Presiding Justice Fletcher joins in

---

[7] See also *Reece v. State*, 210 Ga. 578, 579 (82 SE2d 10) (1954), rev'd on other grounds, 350 U. S. 85 (76 SC 167, 100 LE 77) (1955) (a correct charge on criminal insanity and a subsequent incorrect charge on criminal responsibility for those adjudged insane were inconsistent and thus likely to create juror confusion, requiring new trial); *Ledford v. State*, 215 Ga. 799, 806 (113 SE2d 628) (1960) (same); *Smith v. Smith*, 454 F2d 572, 578 (5th Cir. 1971) (Georgia's previous charge on alibi defense was inconsistent with the tenant that a criminal defendant carries no burden of proof whatsoever, and thus was likely to cause juror confusion, requiring a new trial).

[8] 257 Ga. 8, 9 (354 SE2d 116) (1987).

[9] 257 Ga. 209, 210 (356 SE2d 886) (1987).

this dissent.

DECIDED MARCH 10, 1997 —
RECONSIDERATION DENIED APRIL 3, 1997.

*Douglas R. X. Padgett,* for appellant.
*Lewis R. Slaton, District Attorney, John C. Culp, Assistant District Attorney, Michael J. Bowers, Attorney General, Christopher S. Brasher, Assistant Attorney General,* for appellee.

