### A98A1920. WALSH v. THE STATE.
(512 SE2d 408)

POPE, Presiding Judge.

William F. Walsh appeals from his conviction on three counts of child molestation. We affirm.

1. In his first enumeration, Walsh asserts that a search warrant issued for his home on November 8, 1996, lacked probable cause and that the trial court erred in denying his motion to suppress evidence seized pursuant to the warrant. Walsh also argues that three scraps of paper seized by police did not fall within the scope of the warrant.

(a) "On appeal of the denial of a motion to suppress, the evidence is to be construed most favorably to the upholding of the findings and judgments made. [Cit.] Moreover, when reviewing an affidavit for a search warrant, we look at the totality of the circumstances to determine if there was probable cause to issue the search warrant. [Cit.]" (Punctuation omitted.) *Culver v. State,* 230 Ga. App. 224, 227 (1) (496 SE2d 292) (1998).

The search warrant was obtained by Sergeant Mike McHugh of the Walton County Sheriff's Office. McHugh's affidavit stated that on October 25, 1996, he was informed by the Walton County Department of Family & Children Services (DFCS) that several male students at Social Circle Elementary School had complained that they

had been fondled by Walsh, a teacher at the school. McHugh said that he had interviewed a number of students and that they had given credible statements that Walsh had touched at least five students inappropriately in violation of OCGA § 16-6-4 (a). He also represented that other witnesses corroborated the students' statements that they were photographed by and with Walsh, at Walsh's request. An adult told investigators that Walsh had shown her photos he had taken depicting some of his former students in a wooded area and that the pictures appeared to be computer-generated. McHugh also stated that he had learned from Gilmer County that similar charges had been asserted by students at a school in Gilmer County where Walsh once taught, that Walsh had admitted to taking pictures of the Gilmer County students involved, and that such pictures had been located at Walsh's residence. McHugh noted that his investigation had also revealed that Walsh had a thorough working knowledge of photographic equipment and development.

Based upon this affidavit, the Walton County magistrate issued a warrant allowing investigators to search for "photographs, negatives, computer disks, computer programs or computer equipment which contain images or pictures of children that were photographed by William 'Bill' Walsh or photographed with Walsh."

At the suppression hearing, McHugh testified that he has had special training in the area of child molestation and abuse and has handled between 30 and 40 such cases. He confirmed the facts asserted in his affidavit, explaining that he had access to the entire Gilmer County file on Walsh and that he had seen photographs that Walsh had taken of the children in Gilmer County. While McHugh acknowledged that there was nothing on the face of any of the pictures referenced in his affidavit showing criminal activity, he said that the pictures established physical contact with some of the students who previously had made allegations against Walsh. He testified that in his experience, child molesters often keep a trophy or some token to remind themselves of their victims, and that trophy sometimes is a photograph of the victim. McHugh further explained that he obtained the warrant because he was seeking photographs showing physical contact between Walsh and the alleged Walton County victims.

We find that this evidence was sufficient to find probable cause to issue the warrant. "The totality of the circumstances and evidence collected was sufficient to find that there was a fair probability that a search of [Walsh's home] would result in evidence [relevant to] a crime, and therefore probable cause existed for the issuance of the warrant." *Culver v. State*, 230 Ga. App. at 228 (1). See *Bromley v. State*, 259 Ga. 377, 379 (3) (380 SE2d 694) (1989); *Miller v. State*, 219 Ga. App. 213, 216 (2) (464 SE2d 621) (1995).

(b) McHugh, accompanied by officers from the GBI and the Oconee Sheriff's Office, executed the warrant at Walsh's home and seized six photo albums full of pictures and three small scraps of paper with Internet sites written in red ink. These scraps of paper were located in the lower right-hand drawer of the desk where the computer was kept. McHugh testified that they seized these papers because some of the Internet sites listed had obviously pornographic titles and further contained the suffix "JPG" or "GIF," which indicates that a picture is attached.

Walsh contends that these papers fell outside the scope of the search as they were not listed among the items in the warrant. However, the officers were entitled to seize this evidence, even if it was not specifically listed in the warrant. The search warrant allowed the officers to seize photographs, computer programs and computer equipment containing images or pictures of children photographed with or by Walsh. The three slips of paper contained a listing of Internet addresses, some of which had pornographic titles and which indicated that photographic images were attached. Because the officers did not have Internet access at the scene of the search, they could not determine whether the photographs referenced were of Walsh or of any of the children. But because the addresses indicated that they were, as McHugh phrased it, "pathways to pictures" the officers were entitled to seize the papers pending further investigation.

"The police officers were not compelled to overlook relevant evidence . . . simply because it was not specifically [listed] in the search warrant. [Cit.] The fact that the police officers seized items not listed in the warrant did not render the search a general one or make it unlawful. [Cits.]" (Punctuation omitted.) *McBee v. State*, 228 Ga. App. 16, 21 (3) (491 SE2d 97) (1997) (allowing the seizure of nude photographs even where photographs were not listed in the warrant).

(c) Walsh next contends that the three slips of paper were not subject to seizure because they were private papers within the meaning of OCGA § 17-5-21. The Supreme Court of Georgia has held, however, that the private papers referred to in that statute are restricted to those covered by an applicable privilege. *Sears v. State*, 262 Ga. 805, 807 (3) (426 SE2d 553) (1993); *Hale v. State*, 220 Ga. App. 667, 670 (2) (d) (469 SE2d 871) (1996). As no privilege applies to Walsh's papers, this argument is without merit.

2. Walsh also contends that the trial court erred in failing to suppress evidence collected during a warrantless search of his home on November 15, 1996. On that date, the Oconee County Sheriff called Walsh's wife and asked if he and a GBI agent working on the case could come over and take the computer. She agreed. When the officers arrived at the Walsh house, Walsh's wife let them in and told

them that they could take the computer. She told the officers that she had purchased the computer for her husband, and their children also used it.

Walsh contends that his wife lacked authority to consent to a seizure of the computer because it contained records of his Internet browsing, which were a record of his personal thoughts and associations. We disagree.

"The authority which justifies the third-party consent does not rest upon the law of property, . . . [cits.] but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *United States v. Matlock*, 415 U. S. 164, 171, n. 7 (94 SC 988, 39 LE2d 242) (1974). See *Gossett v. State*, 199 Ga. App. 286, 287 (1) (b) (404 SE2d 595) (1991).

At the time of the search, Walsh and his wife were married and, until the time of Walsh's arrest, had resided together in the house. Further, Walsh's wife had purchased the computer, and the couple's children used it. Thus, the computer was not Walsh's alone but was available to the entire family. Under these circumstances, Walsh's wife had the authority to consent to the seizure of the computer, because she had common authority over the premises as well as over the computer itself. See *Brooks v. State*, 231 Ga. App. 561, 563 (2) (500 SE2d 11) (1998); *Johnson v. State*, 266 Ga. 140, 141 (2) (464 SE2d 806) (1996).

3. Walsh argues in his next enumeration that the trial court erred in denying his motion in limine to exclude materials obtained from a search of his computer. These materials included nude pictures of young men and explicit transcripts from homosexual Internet chatroom sessions.

"Where a defendant charged with sex crimes seeks to exclude from evidence material offered for its sexually explicit nature, the question is whether the evidence sought to be excluded by the defendant is admissible to show defendant's bent of mind toward the sexual activity with which he was charged or defendant's lustful disposition." (Citations and punctuation omitted.) *Ingram v. State*, 211 Ga. App. 252, 256 (6) (438 SE2d 708) (1993). "Furthermore, if evidence is relevant, no matter how slightly, it generally should be admitted and its weight left to the jury." (Citations and punctuation omitted.) *Kelley v. State*, 233 Ga. App. 244, 250 (4) (503 SE2d 881) (1998). See also *Culver v. State*, 230 Ga. App. at 235 (16).

Walsh's child molestation charges concern the inappropriate touching of male children. While the materials at issue do not specifi-

cally depict sexual activity involving children, all the materials concern sexual activity between males. The pictures introduced by the state were either of young nude men or involved homosexual acts. The chatroom materials were sexually explicit and related to homosexual activity. "This court . . . has consistently held in child molestation cases that [materials] showing natural and unnatural sex acts . . . can have a tendency to show a bent of mind toward sexual activity. [Cits.] This [evidence] is admissible to show bent of mind and lustful disposition . . . , even if the content of the material does not relate to children. [Cit.]" (Punctuation omitted.) *Burris v. State*, 204 Ga. App. 806, 808 (1) (420 SE2d 582) (1992). See also *Ingram v. State*, 211 Ga. App. at 256 (6).

Accordingly, we find no error in the trial court's denial of Walsh's motion in limine.

4. In his last enumeration, Walsh contends that the trial court erred in denying his motion for a directed verdict for acquittal because the evidence showed that no touching occurred beneath the victims' clothing and no other indicia existed that the touching was sexual in nature.

Walsh was tried for child molestation based upon the testimony of three young male victims, who were students at an Oconee County middle school, where Walsh was a substitute teacher. The first boy, who was 11, testified that when Walsh called him up to his desk he placed his hand on the boy's buttocks. When the boy looked at Walsh's hand, he removed it, but Walsh placed his hand there a second time and held it there until the boy pulled away. The boy testified that Walsh's actions made him very uncomfortable.

The second boy, who was 12, testified that on that same day, Walsh called him up to his desk. Walsh then grabbed his buttocks and pulled the boy closer to him. Walsh kept his hand there for a few minutes until the boy returned to his desk. The boy testified that Walsh's actions qualified as a "bad touch."

The third boy, who was 13, was also called up to Walsh's desk that day. Walsh said he wanted to speak to the boy to compliment him on his good behavior. The boy thought this was strange as he had not been especially good that day. Walsh then grabbed the boy's buttocks, making him feel uncomfortable. Later, when the boy was attempting to conceal a note he had received from a friend, Walsh came over to the boy's desk, put his hand under the paper and held the boy's penis for a matter of seconds until the boy pulled his chair away. A girl in the class witnessed Walsh touching the boy and testified that Walsh had touched the boy on the penis. Walsh then kept all three boys in the classroom after dismissing the rest of the class to recess and gave the boys candy.

We find that this evidence was sufficient to present the issue of

child molestation to the jury. A conviction for child molestation does not require a showing that the victim was touched beneath his clothing. See *Watson v. State*, 222 Ga. App. 814 (476 SE2d 96) (1996); *Bragg v. State*, 217 Ga. App. 342, 343 (2) (457 SE2d 262) (1995). Moreover, the issue of whether the touching was sexual in nature is for the jury. See *Watson v. State*, 222 Ga. App. at 816 (3).

*Judgment affirmed. Beasley, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 19, 1999.

*Kennedy R. Packer*, for appellant.
*Harry N. Gordon, District Attorney, Kirk M. Thomas, Assistant District Attorney*, for appellee.