## A04A1915. HOLTON v. THE STATE.
(605 SE2d 619)

ELLINGTON, Judge.

A Richmond County jury convicted Michael Erwin Holton of child molestation, OCGA § 16-6-4 (a), following an incident involving his girlfriend's seven-year-old daughter, D. C. Holton appeals from the trial court's denial of his motion for new trial, contending the trial court erred in excluding certain evidence under the Rape Shield Statute and in admitting evidence that had not been provided during discovery. He also challenges the sufficiency of the evidence to support his conviction. Finding no error, we affirm.

On review of a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence and all reasonable deductions therefrom in the light most favorable to the

jury's verdict. *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979); *McGhee v. State*, 263 Ga. App. 762 (1) (589 SE2d 333) (2003). Viewed in this light, the evidence showed that, on December 3, 2002, D. C. arrived at school late. She was crying and told the teacher that she had gotten into trouble for not hugging her mother's boyfriend. The victim was upset and "clingy" all day, and did not want to get onto the school bus that afternoon. The teacher notified the school counselor, who testified that she talked to the victim the next day. According to the counselor, the victim said that sometimes when she hugged Holton, he "tickled" her chest and vaginal area, and that this had happened more than once. She also reported that he had touched her with his finger inside her pants.

The counselor talked to D. C.'s mother and Holton the next day. The counselor testified about statements made to her by Holton, as follows: "Mr. Holton said that the only thing that he could think that could have happened was there was one night when they [had] several people over at their house and he and [the mother and the victim] had to sleep in the same bed. And . . . he had a sexually arousing dream and he woke up and found himself rubbing on [D. C.]" The counselor also asked Holton and D. C.'s mother about the victim's "sexualized" behavior, noting that she would often come to school "extremely made up," wearing blush and lipstick. The mother responded that she did not know the victim had makeup, and Holton volunteered that he had purchased it for the victim. In addition to this information, the mother told the counselor that D. C. had previously been molested when she lived in Mississippi.

The day after D. C. made her outcry to the school counselor, the victim met with a Department of Family and Children Services ("DFACS") investigator at the school. The victim told the investigator that, one morning while her mother was in the shower, Holton had touched her in her "private area" between her legs. Holton told her not to tell anyone because it was a secret. The investigator then talked to Holton and the mother in their home and told them what the victim had said. Holton responded that "if he did touch [D. C.] he didn't mean to."

Another investigator also talked with the victim and videotaped the interview. The jury viewed the videotape at trial. During the interview, D. C. reported that Holton had "tickled" her on the outside of her clothes. The investigator gave D. C. anatomical drawings of the front and back of a girl and asked her to circle the areas where Holton had "tickled" her. The victim circled the genital area on the front and the buttocks. The trial court admitted the drawings into evidence over the objection of defense counsel. See Division 2, infra.

The mother testified about an incident that occurred one night a few weeks after she had moved in with Holton in August 2002. That

night, D. C. slept with her mother and Holton after she had wet her bed. The next morning, while the mother was getting dressed after a shower, D. C. knocked on the bathroom door. The victim told her mother that Holton had tickled her and rubbed her on her "belly," and that it woke her up. When asked, the victim told her mother that Holton did not put his hands under her gown or in her panties.

The victim also told her father and his girlfriend of the molestation. In addition to telling them about the time Holton touched her while her mother was in the shower, the victim referred to another incident that had happened the night before she made her outcry to the school counselor in December 2002. The victim told her father's girlfriend that she was on the couch at her mother's home and Holton came in and started touching her breasts, her thighs, her "private" areas, and her "butt." When she started crying, Holton left her alone. The next morning, Holton was mad at D. C. because she would not talk to him. She started crying again at school, which is what led to her meeting with the school counselor.

Finally, while talking to a police officer before his arrest, Holton stated that he may have touched D. C. while he was asleep or unconscious, but that he did not do any sexual acts with her "on purpose." According to the officer, Holton claimed that "he probably woke up at that time and realized it was wrong and stopped."

1. On appeal, Holton argues that the trial court erred when it prevented him from presenting evidence that D. C. had previously been molested by another child. On cross-examination, Holton's counsel asked the school counselor about her earlier reference to the prior molestation in Mississippi. The court sustained the State's objection that the evidence was inadmissible under the Rape Shield Statute,[1] and counsel moved on to another area of questioning. Counsel did not proffer the excluded evidence or argue that the Rape Shield Statute should not apply. Later, when counsel asked the victim's mother about D. C.'s "encounter with another child" in Mississippi, the State again objected, and counsel moved on without proffering the excluded testimony or explaining how it was relevant and should be admitted. Under these circumstances, this enumeration presents nothing for this Court to review. *Nunnery v. State,* 234 Ga. App. 371, 372 (2) (506 SE2d 888) (1998); see also *Pittman v. State,* 208 Ga. App. 211, 218 (6) (430 SE2d 141) (1993) (an attorney's mere allusion to the substance of excluded evidence is not the equivalent of an offer of proof).

2. Holton contends the trial court erred when it admitted the anatomical drawing into evidence, claiming it had not been provided

---

[1] OCGA § 24-2-3 (a).

to him during discovery pursuant to OCGA § 17-16-4.[2] Assuming without deciding that Holton was entitled to the document during discovery,[3] the record shows that the State provided Holton's counsel with the videotape before trial. The videotape showed the victim marking on the drawing after the counselor asked her to circle where Holton had touched her. Counsel admitted that he could tell from the videotape that the victim was drawing on the paper, but claims that he could not see exactly what she was doing. Counsel did not request a continuance to inspect the document.

In its order denying Holton's motion for new trial, the trial court found that the existence of the drawing and the fact that the child marked on it in response to the counselor's questions was apparent from the videotape. It also found that there was no evidence that Holton's counsel was prevented from inspecting or copying the drawing pursuant to OCGA § 17-16-4 (a) (3) within the applicable time period. These findings are supported by the record.

Further, the trial court properly recognized that, even if there had been a reciprocal discovery violation, Holton could show no prejudice, as the evidence was merely cumulative of the victim's statements to the school counselor and the investigators, as well as her father and his girlfriend. Absent prejudice and a showing that the State had acted in bad faith in withholding the document, the trial court did not err in admitting the evidence over Holton's objection. See OCGA § 17-16-6 (the trial court may prohibit the State from presenting evidence it did not disclose before trial if the defendant demonstrates both prejudice and bad faith); *Roberts v. State*, 244 Ga. App. 330, 333 (3) (534 SE2d 526) (2000) (accord).

3. Holton challenges the sufficiency of the evidence, arguing that the victim's statements to outcry witnesses were inconsistent and, therefore, insufficient to support his conviction. He also attacks the verdict based upon his unsupported claims that, because of the nature of the allegations, the jury may have been biased against him, may have been so "emotionally involved" in the case that they could

---

[2] Under OCGA § 17-16-4 (a) (3),

[t]he prosecuting attorney shall, no later than ten days prior to trial, or as otherwise ordered by the court, permit the defendant at a time agreed to by the parties or ordered by the court to inspect and copy or photograph books, papers, documents, photographs, tangible objects, audio and visual tapes, films and recordings, or copies or portions thereof and to inspect and photograph buildings or places which are within the possession, custody, or control of the state or prosecution and are intended for use by the prosecuting attorney as evidence in the prosecution's case-in-chief or rebuttal at the trial or were obtained from or belong to the defendant.

[3] The record shows that Holton filed a discovery motion pursuant to *Brady v. Maryland*, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963), but does not demonstrate that he ever opted into reciprocal discovery under OCGA § 17-16-4. See OCGA § 17-16-2 (a) (notice of election).

no longer remain objective, may have been blinded by a thirst for "vengeance, restitution and incapacitation," or may have simply wanted to "coddle" the young victim. Holton urges this Court not to "rubber stamp" the jury's verdict simply because there is evidence to support it, but asks the Court to recognize the inconsistencies of the child's outcries, reweigh the evidence, and reverse the jury's verdict.

On appeal from a jury's verdict, however, this Court does not reweigh the evidence or judge the credibility of witnesses. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B). The jury alone is responsible for resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts to ultimate facts. Id.; *McGhee v. State*, 263 Ga. App. at 763 (1). When reviewing the sufficiency of the evidence, this Court is limited to determining whether the evidence, viewed in the light most favorable to the jury's verdict, is sufficient for a rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged. *Ramirez v. State*, 265 Ga. App. 808, 809 (1) (595 SE2d 630) (2004); see also *Jackson v. Virginia*, 443 U. S. at 319 (III) (B). The evidence presented in this case meets that standard. *Walsh v. State*, 236 Ga. App. 558, 562-563 (4) (512 SE2d 408) (1999) (touching underneath the clothes is not required for a child molestation conviction, and the question of whether the touching was sexual in nature is for the jury's determination).

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED SEPTEMBER 30, 2004.

*Terrence Sommers*, for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney*, for appellee.