## A97A0462. RIVERS v. THE STATE.
### (484 SE2d 519)

ELDRIDGE, Judge.

The crime victim, Petty Officer Frank Padrone, was driving around the Georgia Ports Authority, Garden City, Chatham County, Georgia, about midnight on July 4, 1994, looking for a naval vessel that was to be commissioned on July 9, 1994. He stopped at a pay telephone to call a female friend. While Padrone was on the telephone, a black male approached, grabbed Padrone's left arm, placed a gun to Padrone's head, and demanded the keys to the rental car that Padrone was driving. Padrone turned, looked at the perpetrator, and saw a semi-automatic, large caliber pistol.

The perpetrator took the car keys from Padrone, walked him to the side of a fire station nearby, made him get down on his knees, and took Padrone's wallet from his back pocket. The perpetrator then took Padrone to the rear of the rented Pontiac Grand Am that Padrone had parked beside the fire station and made Padrone get into the trunk of the rental car. Padrone was told that he would be shot unless he got into the trunk.

Padrone was locked in the trunk while the car was driven around for 15 minutes. Padrone was then made to get out of the trunk and ordered to kneel again, but Padrone refused. The perpetrator began to go through Padrone's wallet and found Padrone's military identification card and asked what service he was in. When Padrone told the perpetrator the Navy, the perpetrator told him that he would not be killed because the perpetrator had once served in the Navy; the perpetrator threw down Padrone's I.D. card and drove off in Padrone's rental car.

After the perpetrator left, Padrone went to the nearest pay phone and called 911. The Chatham County Police responded, and when they learned the location of the armed robbery and kidnapping, they took him to the Garden City Police. The next day Padrone made a statement for the police in which he described the perpetrator as being approximately 5′ 8″ to 5′ 10″ and about 180 pounds. Thereafter, Padrone was shipped to Pearl Harbor, Hawaii, for duty.

Officer Walter Deal of the Garden City Police Department had,

on July 19, 1994, a report of an armed robbery and car-jacking at the Chatham City Apartments in Garden City. The appellant, Dedric Rivers, was the complainant, who reported that a black male had approached him while he had been on a pay phone, grabbed him around the neck, put a gun to his head, took his wallet, took his car keys, and drove off in appellant's Camaro. Appellant was unable to provide any identifying information about the Camaro, gave a false name (Dedric McKnight), and offered no personal identification; appellant told the officer that the allegedly stolen car belonged to his parents who lived in Jacksonville and told the officer that he could be reached through his girl friend, LaToya Cobb.

Being unable to run a check on the Camaro for lack of identification and unable to locate the parents in Jacksonville, the police contacted LaToya Cobb to learn more; they found out from Cobb that appellant's real name was Rivers, that he had no Camaro, and that he had been in the Navy. Cobb told the police that appellant had recently been driving a new Pontiac Grand Am and that he had a gun. Cobb also told the police that appellant lived in Frazier Homes on Emerald Drive.

In the early morning hours of July 19, 1994, Detective Stratman, who was investigating appellant's complaint, went to confront appellant over the various discrepancies in his report. Upon arriving at appellant's Frazier Street address, the detective found a Grand Am parked by the house that had the vehicle identification number for the Padrone rental car; the tag, however, was for a grey Mercury Cougar registered to appellant, and the Mercury Cougar was also parked there with the license tag from the Grand Am in the rear window.

The detective confronted appellant, who admitted possession of the Grand Am and Cougar; appellant consented to a search of the two vehicles. Appellant was arrested for possession of a stolen car, given his *Miranda* warnings, and was taken to the Garden City Police Department.

An identification officer, Sergeant Kaminsky, processed both vehicles and found in appellant's Cougar a deposit check made out to Padrone; he found in the Grand Am appellant's wallet, containing Padrone's driver's license.

Sergeant Kaminsky compiled a photo array, containing appellant's picture, for possible identification by Padrone. The photo array was sent to Naval Intelligence at Pearl Harbor, where Padrone viewed it in September 1994; after reading the admonition regarding the lineup, Padrone picked out appellant's picture; Padrone was "not 100 percent sure but was pretty positive" that appellant was the perpetrator. When Sergeant Kaminsky sent the photo array, he did not reveal which picture was the suspect in custody, appellant.

The day prior to trial, Padrone picked appellant out of a physical lineup. Padrone identified appellant, although, again he admitted that he was not 100 percent positive; Padrone was less than 50 percent confident of his identification nearly one year later. Appellant, upon arrest, was 6′ 3″ in height and 245 pounds in weight. In the courtroom with different lighting, Padrone was 85 to 90 percent sure of his identification.

Appellant was tried on August 8 through 10, 1995, and convicted of armed robbery, kidnapping, aggravated assault, theft by taking, theft by receiving stolen property, and making a false report of a crime.

1. Appellant's first enumeration of error is that the trial court erred in failing to sever Count 5, theft by receiving stolen property, and Count 6, making a false crime report, from the other counts of the indictment.

This Court held in *Smith v. State*, 225 Ga. App. 553 (484 SE2d 515) (1997), that when separate offenses are connected by a series of acts that form a single plan or scheme, it is not an abuse of the trial court's discretion to join the crimes for trial. See also *Dingler v. State*, 233 Ga. 462, 463 (211 SE2d 752) (1975); *Samples v. State*, 217 Ga. App. 509 (460 SE2d 795) (1995). The trial court has discretion on the issue unless the offenses were joined *solely* because they are of the same or similar character, in which case severance is mandatory. See *Dingler v. State*, supra; *Jordan v. State*, 172 Ga. App. 496 (1) (323 SE2d 657) (1984).

In the case sub judice, the false report of a crime caused the police to investigate and find that appellant had possession of Padrone's rental car, driver's license, and check, all of which had been stolen in an armed robbery using the same modus operandi. The stolen property was located in both appellant's and the victim's vehicles, and the tags on the cars had been switched. Thus, severance was not required.

Further, the charges of theft by taking and theft by receiving were alternative charges for the jury to choose if the State failed to carry the burden on identity. Thus, the two offenses were not joined *solely* because they both involve theft. See *Lundy v. State*, 265 Ga. 30 (453 SE2d 466) (1995). Accordingly, severance was not demanded, and the trial court did not abuse its discretion in denying appellant's motion to sever. *Whitfield v. State*, 217 Ga. App. 402, 403 (457 SE2d 682) (1995); *Miller v. State*, 214 Ga. App. 393, 394 (1) (448 SE2d 20) (1994).

2. The second enumeration of error was that the evidence was not sufficient to find appellant guilty beyond a reasonable doubt under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The evidence showed that appellant in his description of the fictitious armed robbery of himself described, in great detail, how the armed robbery occurred on Padrone; appellant had possession of Padrone's rental car, driver's license, and check; appellant had been in the Navy and the perpetrator had told Padrone that he had served in the Navy; Padrone saw appellant with a gun, as did Cobb; Padrone identified appellant in a photo array, as well as during a physical lineup. A rational trier of fact could have found proof of appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, supra; *Lewis v. State*, 214 Ga. App. 830, 831 (449 SE2d 535) (1994); *Grant v. State*, 195 Ga. App. 463, 464 (1) (393 SE2d 737) (1990).

3. The third enumeration of error is that the trial court erred in allowing identification testimony because there was a substantial likelihood of irreparable misidentification.

The trial court found nothing in the photo array or in the physical lineup which was suggestive or was likely to cause an irreparable misidentification of appellant. Padrone showed differing degrees of certainty about his identification of appellant: he was the most certain in September 1994, closer in time to the event; he was the least certain nearly one year later when the lighting conditions were different. However, in each instance, Padrone picked the appellant out of a non-suggestive lineup. The trial court did not find that circumstances surrounding the identification lineup were unduly suggestive, nor did the trial court find anything in the identification that was conducive to irreparable misidentification. *Stovall v. Denno*, 388 U. S. 293, 302 (87 SC 1967, 18 LE2d 1199) (1967). The trial court permitted Padrone to be examined and cross-examined regarding his out-of-court identification of appellant and to testify as to his degree of certainty, as well as why he recognized appellant. *Montos v. State*, 212 Ga. 764, 767 (6) (95 SE2d 792) (1956); *Duffey v. State*, 151 Ga. App. 673, 674 (2) (261 SE2d 421) (1979); *Thomas v. State*, 128 Ga. App. 538, 542 (4) (197 SE2d 452) (1973). Defense counsel was present at the lineup held immediately prior to trial, and there exists no contention that the lineup was impermissibly conducted. *Gilbert v. California*, 388 U. S. 263 (87 SC 1951, 18 LE2d 1178) (1967); *United States v. Wade*, 388 U. S. 218 (87 SC 1926, 18 LE2d 1149) (1967).

Appellant relies upon the due process standard for pre-trial identification, as set forth in *Neil v. Biggers*, 409 U. S. 188 (93 SC 375, 34 LE2d 401) (1972). Under the totality of the circumstances, the trial judge did not find that either of the two prongs of the *Neil* test had been violated. In the charge to the jury, the trial court gave the five factors to be considered in possible misidentification: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demon-

strated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. Inconsistencies in the original description as to height and weight do not make an identification "inherently unreliable." *Grier v. State*, 206 Ga. App. 93, 94 (1) (424 SE2d 358) (1992); *Price v. State*, 194 Ga. App. 453, 454 (1) (390 SE2d 663) (1990). The lineup was not impermissibly suggestive because the appellant was the only person to appear both in the photo array and the physical lineup. *Clark v. State*, 166 Ga. App. 366, 368 (3) (304 SE2d 494) (1983). There was nothing in the pre-trial identification process to require the exclusion of an in-court identification. Any uncertainty in either the out-of-court or in-court identification process was merely a factor to be considered by the jury in determining the weight to give to the witness' testimony. *Buckner v. State*, 209 Ga. App. 107, 108 (1) (c) (433 SE2d 94) (1993). When a victim has sufficient independent basis for an in-court identification, even a tainted pre-trial identification process that is suggestive will not require exclusion of the in-court identification, unless there was a Fourth Amendment violation. *United States v. Crews*, 445 U. S. 463 (100 SC 1244, 63 LE2d 537) (1980); *United States v. Ceccolini*, 435 U. S. 268 (98 SC 1054, 55 LE2d 268) (1978); see also *Appling v. State*, 221 Ga. App. 162, 163-164 (2) (470 SE2d 761) (1996).

We find that the trial court did not err in denying the appellant's motion in limine to suppress the identification of appellant.

4. The fourth enumeration of error is that the trial court erred in allowing a weapon, introduced by the State for demonstrative purposes, to go into the jury room.

In the case sub judice, there was no dispute that a large semi-automatic pistol was used in the armed robbery. Likewise, there was no dispute that appellant had a pistol, despite the fact LaToya Cobb, appellant's girl friend, was unable to describe the gun; although the gun was about the same size as the demonstrative pistol, Cobb did not believe that the two looked the same. Nevertheless, the *existence* of the gun is not at issue in the case sub judice. Thus, contrary to appellant's assertions, *Paxton v. State*, 160 Ga. App. 19 (285 SE2d 741) (1981), is not controlling, as it is distinguishable on the law and facts. In *Paxton*, because the existence or non-existence of a gun was a question for the jury, any demonstrative pistol could have had a prejudicial effect on the jury. The case of *Stiles v. State*, 216 Ga. App. 308, 309 (2) (454 SE2d 189) (1995), authorized the admission of a weapon as a demonstrative aid for the jury. See *Boyd v. State*, 264 Ga. 490, 491 (2) (448 SE2d 210) (1994); *Duvall v. State*, 238 Ga. 325, 326 (232 SE2d 918) (1977). Further, there was no dispute that a similar weapon was used during the robbery. *Cauley v. State*, 206 Ga. App. 233, 234 (1) (424 SE2d 822) (1992).

Thus, the trial court did not err in admitting the weapon for

demonstrative purposes or allowing it to go into the jury room.

5. The fifth enumeration of error is that the trial court erred in its charge to the jury. Specifically, the objection is that the pattern jury charge used the language "[m]oral and reasonable certainty is all that can be expected in a legal investigation." Appellant's counsel reserved the right to make later objections.

Neither the United States Supreme Court nor the Supreme Court of Georgia has held that the above language violates due process by diminishing in the minds of the jury that the standard of proof that the State must carry is "proof beyond a reasonable doubt." See *Victor v. Nebraska*, 511 U. S. 1 (114 SC 1239, 127 LE2d 583) (1994); *Baldwin v. State*, 264 Ga. 664, 665-666 (1) (449 SE2d 853) (1994); *Vance v. State*, 262 Ga. 236, 237-238 (2) (416 SE2d 516) (1992), overruled in *Sterling v. State*, 267 Ga. 209, 210 (2) (477 SE2d 807) (1996).

"Although the better practice is to omit any reference to a 'moral and reasonable certainty,' the inclusion of such a reference may not constitute reversible error when considered in the context of the entirety of the charge on reasonable doubt. *Hicks v. State*, 262 Ga. 756, 757 (3) (425 SE2d 877) (1993). Here, the trial court's reference to a 'moral and reasonable certainty' appears in the context of a charge which 'as a whole repeatedly and accurately conveyed to the jury the concept of reasonable doubt.' *Vance v. State*, [supra at 237 (2)]. Accordingly, that reference 'did not lessen the burden of proof necessary to obtain a conviction, and therefore did not violate the Due Process Clause. (Cits.)' *Brown v. State*, 264 Ga. 48, 50 (3) (a) (441 SE2d 235) (1994). See also *Baldwin v. State*, [supra at 666 (1)]." *Armstrong v. State*, 265 Ga. 18, 19 (453 SE2d 442) (1995); see also *Lloyd v. State*, 214 Ga. App. 564, 565-569 (1) (448 SE2d 729) (1994).

We find that the trial court did not err in giving the "moral and reasonable certainty" charge.

*Judgment affirmed. Birdsong, P. J., and Ruffin, J., concur.*

DECIDED MARCH 11, 1997.

*Mark B. Beberman,* for appellant.

*Spencer Lawton, Jr., District Attorney, Christine M. Sieger Barker, Assistant District Attorney,* for appellee.