A01A0937. SCOTT v. THE STATE.
(545 SE2d 709)

ELDRIDGE, Judge.

A Chatham County jury found Peter Miller Scott guilty of the sale of cocaine. A recidivist count showing five prior cocaine convictions was included in the indictment, and Scott was sentenced to life imprisonment pursuant to OCGA § 17-10-7 (c). He appeals, claiming (1) the trial court erred in denying his motion to suppress any in-court identification by the arresting officer since such was tainted by an impermissibly suggestive pretrial photo identification; and (2) the sentence of life imprisonment was improperly imposed without exercise of the trial court's discretion. We have reviewed Scott's errors as enumerated. In light thereof, we affirm his conviction, but remand for resentencing.

The facts, viewed most favorably to the verdict,[1] show that Agent Dillard with the Chatham County Narcotics Team ("CNT") has specific training in physical surveillance and tactical take-down operations. He specializes in undercover narcotics work. On March 5, 1998, using a confidential and reliable informant ("CI"), Dillard went

---

undercover to Weezy's, a pool room/snack shop in the 600 block of East 39th Street in Savannah, because drug sales had been reported outside the shop. Dillard's CI was equipped with both audio and video equipment hidden in his clothing, which equipment was monitored during the entire transaction by another nearby CNT agent. While Agent Dillard remained in the unmarked vehicle, the CI entered Weezy's; the audio and video equipment recorded his approach of appellant Scott and their subsequent conversation.

Scott took the CI outside Weezy's to the corner of 39th Street and Broad. Agent Dillard had a clear view of the two men as the CI handed Scott $50, and Scott dropped crack cocaine into the CI's hand. The CI then brought Scott over to Agent Dillard and introduced the two men, identifying Dillard as his cousin, "Tony." Dillard and Scott shook hands. Thereafter, Dillard and the CI left the scene and drove directly to the CNT office. The drugs were turned in to the Georgia Bureau of Investigation's Crime Lab, where they tested positive for cocaine.

After the CI buy, Dillard told another CNT agent, Plair, what had happened at Weezy's. From his own experience with that location, Agent Plair picked out a "stack" of six to nine police photographs; he handed them to Dillard, stating "these are the guys that usually be out at 39th Street." Dillard looked though them until he found Scott. "So I showed him it was Peter Miller Scott that the CI had bought from." The photographs were placed in no particular order, and, following Dillard's identification of Scott, the "stack" of photos was not otherwise preserved for evidentiary purposes.

Approximately two weeks later, again undercover, Dillard returned to the 600 block of East 39th Street, this time with Agent Plair. Dillard saw Scott outside Weezy's, and he told Plair, "That's the guy who sold the CI the crack cocaine."

1. In his first enumeration of error, Scott contends that the pretrial photographic identification tainted Dillard's in-court identification of him. He claims that, but for the "suggestive" photographic array, Dillard would not have been able to identify Scott as the perpetrator. We disagree.

(a) Scott's argument reflects a misunderstanding of the nature of a "suggestive" identification process. There must be a suspect that a State agent is trying to "suggest" as the proper choice in order for an identification process to be impermissibly "suggestive" and, thus, tainted:

It must be recognized that improper employment of photographs by police may sometimes cause witnesses to err in identifying criminals. A witness may have obtained only a brief glimpse of a criminal, or may have seen him under poor

conditions. Even if the police subsequently follow the most correct photographic identification procedures and show him the pictures of a number of individuals *without indicating whom they suspect*, there is some danger that the witness may make an incorrect identification. This danger will be increased if the police display to the witness only the picture of a single individual who generally resembles the person he saw, or if they show him the pictures of several persons among which the photograph of a single such individual recurs or is in some way emphasized. The chance of misidentification is also heightened if the police indicate to the witness that they have other evidence that one of the persons pictured committed the crime. Regardless of how the initial misidentification comes about, the witness thereafter is apt to retain in his memory the image of the photograph rather than of the person actually seen, reducing the trustworthiness of subsequent lineup or courtroom identification.[2]

Here, Plair had no particular suspect to "suggest" to Dillard. Plair was not on the scene at the time of the incident; he had not investigated the case; and he had no idea who sold the cocaine to the CI. Plair did not suspect a potential perpetrator and cause — consciously or unconsciously — Dillard to confirm such suspicions through an identification process, which is the essence of an impermissibly "suggestive" ID. In this case, Plair pulled a stack of six to nine photographs of people who were "usually" found outside of Weezy's, a stack that may or may not have contained the perpetrator. Since Plair did not have any suspect to "suggest" to Dillard, the subsequent photographic identification by Dillard was not made through an impermissibly "suggestive" police procedure.

(b) Convictions based on eyewitness identification at trial following a pretrial identification by photograph will be set aside only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.[3] Even where a pretrial identification has been found to be tainted, a subsequent in-court identification is admissible if it has some other, independent basis.[4] Here, Agent Dillard testified that his identification was based on personally seeing Scott outside Weezy's and viewing Scott's sale of cocaine to the CI, as well as subsequently being introduced to Scott and shaking his hand. Scott's arguments

---

[2] (Footnotes omitted; emphasis supplied.) *Simmons v. United States*, 390 U. S. 377, 383-384 (88 SC 967, 19 LE2d 1247) (1968).

[3] *Talley v. State*, 209 Ga. App. 79, 80 (1) (432 SE2d 667) (1993).

[4] *Jacobs v. State*, 207 Ga. App. 714, 715 (429 SE2d 256) (1993).

regarding the clarity of Dillard's view from the unmarked vehicle go to the weight of the evidence, not its admissibility.[5] Accordingly, as Dillard's identification had an independent origin, we find that the trial court properly denied the motion to suppress Dillard's in-court identification.

(c) Under this enumeration of error, Scott also appears to claim (1) Dillard's testimony that he previously identified Scott at another court hearing "impermissibly bolstered" his trial testimony; and (2) Dillard's identification at this prior court hearing was based on the fact that Scott was the "only black male" sitting at counsel table. These contentions are meritless. As stated, Dillard had a sufficient independent basis for his identification of Scott, and, thus, Scott's status as the only black male at counsel table during the prior hearing went to the weight, not the admissibility of the identification. Further, Scott's attack on the veracity of Dillard's identification made relevant any previous identifications, and such were not "impermissibly bolstering."

2. Scott was indicted as a recidivist with five previous drug convictions. At sentencing, the prosecutor argued to the trial court that the court had no discretion in sentencing under OCGA §§ 16-13-30 (d) and 17-10-7 (c): "I believe that there is only one possible sentence in this case and that is a life sentence under 17-10-7 (c), which by operation of law is without parole." The trial court accepted the prosecutor's contention: "I am required under the law to sentence you to the maximum which is a life sentence. This sentence being a life sentence under 17-10-7 (c)." This is incorrect.

Any person who upon conviction for a fourth [felony] offense or for subsequent offenses [must] serve the maximum time *provided in the sentence of the judge* based upon such conviction and shall not be eligible for parole until the maximum sentence has been served. OCGA § 17-10-7 (c). For a second or subsequent violation of OCGA § 16-13-30 (b), the sentencing judge must impose a sentence of not less than ten years nor more than 40 years or life imprisonment. OCGA § 16-13-30 (d). Consequently, the sentencing judge retains the discretion either to impose any sentence within the statutory mandatory minimum and maximum sentence range or else to impose a life sentence.[6]

While under OCGA § 17-10-7 (c), Scott would be required to serve the

---

[5] *Rivers v. State*, 225 Ga. App. 558, 562 (484 SE2d 519) (1997).

[6] (Citations and punctuation omitted; emphasis in original and omitted.) *Mann v. State*, 240 Ga. App. 809-810 (524 SE2d 763) (1999).

maximum time provided in the sentence of the judge, the sentence of the judge was by no means fixed. The judge's failure to exercise discretion when sentencing Scott to "not less than ten years nor more than 40 years or life imprisonment" under OCGA § 16-13-30 (d) was error which we cannot find harmless under the circumstances.[7] Scott's sentence is therefore vacated and this case remanded for the exercise of the trial court's discretion upon resentencing.

Under this enumeration of error, Scott also contends the trial court erred during sentencing when considering his conviction for possession of cocaine with intent to distribute under indictment no. CR940834, since his guilty plea thereto was made under *Alford*[8] and allegedly absent a factual basis. However, we have reviewed the guilty plea transcript introduced at sentencing in relation to this conviction. Therein, Scott stipulated that there was indeed a factual basis for his guilty plea. Further, the prosecution sufficiently established Scott's guilt as a party to the crime of possession of cocaine with intent to distribute so as to factually support Scott's *Alford* plea.[9] Accordingly, this claim of error is without merit.

*Judgment of conviction affirmed. Sentence vacated and case remanded for resentencing. Andrews, P. J., and Miller, J., concur.*

DECIDED MARCH 9, 2001.

*Davis Cohen*, for appellant.
*Spencer Lawton, Jr., District Attorney, Ian R. Heap, Jr., Assistant District Attorney*, for appellee.

---

[7] *Banks v. State*, 225 Ga. App. 754, 756 (5) (484 SE2d 786) (1997).
[8] *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970).
[9] *Ellis v. State*, 243 Ga. App. 431, 432 (533 SE2d 451) (2000).