A04A1243. BLEVINS v. THE STATE.
(606 SE2d 624)

ADAMS, Judge.

William Russell Blevins was convicted following a jury trial of two counts of child molestation, involving two young boys. He appeals following the trial court's denial of his motion for new trial, and we affirm.

1. Blevins asserts that the evidence was insufficient to support his convictions.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to support the verdict, and [Blevins] no longer enjoys a presumption of innocence. Further, we do not weigh the evidence or determine witness credibility but only determine whether the evidence is sufficient under *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The verdict must be upheld if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

(Punctuation and footnotes omitted.) *Salgado v. State*, 268 Ga. App. 18, 19 (601 SE2d 417) (2004).

Viewed in that light, the evidence showed that Blevins lived several houses down from C. R., a nine-year-old boy, in Chatham County. C. R. met Blevins through his friend M. G., who was the son of Blevins's girlfriend. M. G. sometimes spent time at Blevins's house, including overnight visits. When C. R. and M. G. became friends, C. R. also began spending time at Blevins's house, usually accompanied by M. G. While there, the boys would play computer and other games and watch television. C. R. testified that when the boys would spend the night they would sleep in the same bed with Blevins although Blevins had a spare bedroom.

One morning in May 1995, after spending the night, C. R. used Blevins's bathroom. Blevins met him in the doorway and told him to go back inside the bathroom. Blevins then pulled down C. R.'s pants and rubbed C. R.'s penis with his hands, while M. G. and the other

children played video games in the next room. Blevins told C. R. not to tell anyone because it would get Blevins in trouble. Later that day, C. R. and M. G. went camping with Blevins. C. R. did not tell anyone about what had happened until approximately three days after the incident, when he told his mother. C. R.'s mother immediately reported the incident to police.

On June 26, 1995, A. S., an 11-year-old friend of M. G., was playing at M. G.'s house. Blevins was staying with the children while M. G.'s mother took another child to the doctor. The boys planned to accompany Blevins to work that day to assist him in his air conditioning repair business. He promised to pay them each $10 to help him. Before they left for Blevins's job, the boys played video games. While M. G. played one game in the living room, A. S. played another game in a bedroom. After a time, Blevins joined A. S. in the bedroom. Blevins asked A. S. if he wanted to lay down on the bed, but A. S. declined. Blevins then pulled A. S. onto the bed. He unbuttoned and unzipped A. S.'s pants and pulled them down. Blevins touched A. S.'s penis, stroking it up and down for approximately five minutes. Afterward, the two returned to the living room where M. G. was still playing a video game, and Blevins cautioned A. S. not to tell anyone or Blevins would get into big trouble.

The boys accompanied Blevins to work as planned, and then he took them out to eat and to two shopping malls. Blevins bought M. G. some boots and A. S. a football jersey. Blevins took A. S. home. When he got inside, his mother asked him where he got the jersey. A. S. told his mother that Blevins had bought it and also told her about the earlier incident with Blevins at M. G.'s house. His mother called the police.

A. S.'s mother also called M. G.'s mother to report what A. S. had told her. M. G.'s mother confronted Blevins with A. S.'s allegations. In response, Blevins admitted that he had previously been the subject of similar allegations. Blevins then made plans to pack up and move with M. G.'s family to Mexico. During this period, Blevins moved back and forth between Claxton and Chatham County to avoid police. Blevins planned to leave Chatham County on June 29, 1995, after withdrawing $10,000 from his bank account. Police surveillance was set up in the area where Blevins was to meet M. G.'s mother, and he was arrested that same day. Blevins had $10,600 in his possession at the time of his arrest.

Police obtained a warrant to search Blevins's house. During the search, police discovered magazines with sexually-oriented photographs of nude males, magazine articles on the topics of child molestation and pedophilia, numerous pairs of boy's underwear, and letters Blevins had written on the subject of child molestation. Police also discovered a peephole cut into the wall of the bathroom. The peephole

was not readily visible to someone standing in front of the toilet, but allowed the person looking into the hole to view the genitals of someone using the toilet. The hole connected the bathroom to the living room, where it was concealed by a hanging picture.

At trial, the state presented evidence of four similar transactions. Blevins's former stepson testified that in July 1982, when he was four years old, he lived with Blevins in South Carolina. One night, Blevins came into the child's room while he was sleeping, pulled down his pants and fondled his penis. The boy cried out, and his mother came into the room where she saw Blevins pulling up the child's pants. The mother testified that when her son told her what had happened, she confronted Blevins, who apologized. The mother then called police, and Blevins admitted his actions. He pled guilty and was convicted of a lewd act upon a child. Blevins admitted at the trial in this case that he had fondled his stepson's genitals.

C. N. testified that in April 1983, when he was six years old, Blevins invited his mother and him to a party at Blevins's house in North Carolina. After the party, C. N. was invited to spend the night with Blevins's two young sons. After C. N.'s mother left, Blevins made the boys remove all their clothes before going to bed. Blevins then fondled and placed his mouth on C. N.'s penis. Blevins refused the child's request to go home, and in the morning, he placed his mouth on the boy's penis again. C. N. testified that he did not immediately report the incident because he was scared. C. N.'s mother testified that after C. N. came home, he took two baths, which was uncharacteristic of him. When he later told her what happened, she called police. One of the police officers involved testified that C. N. described the incident to him and also said that Blevins promised him money if he would not tell what had happened. Blevins pled guilty and was convicted of taking indecent liberties with a child. Blevins admitted at the trial in this case that he fondled C. N.'s penis.

Tanya Lodge testified at trial that when her son, A. L., was two years old, on or about December 15, 1988, he was playing on the floor while both she and Blevins were in the room. Lodge had known Blevins for approximately seven months as the maintenance man at her apartment building in Savannah, where her mother was the resident manager. She testified that while playing on the floor, A. L. spontaneously stated that Blevins had played with his penis. In response, Blevins had a surprised look on his face, but said nothing. Lodge reported the matter to police and was present when they questioned A. L. During the interview, she observed A. L. fondle the penis of an anatomical doll and place the doll's penis in his mouth. Blevins pled guilty and was convicted of child molestation in connection with the incident.

M. C. W. testified that in July 1989, when he was around 16 or 17 years old, he was living at the same apartment complex in Savannah. One night Blevins spent the night at the apartment where M. C. W. was staying. M. C. W. recalled being awakened that night by Blevins pulling his pants down. Blevins stopped only when M. C. W. resisted. When questioned by police about this incident, Blevins admitted that he may have been sleeping with the boy and that he may have accidentally touched him. No conviction occurred in that case, but the record indicates that the charges in connection with this incident were dismissed in exchange for Blevins's guilty plea in A. L.'s case.

Blevins asserts that the evidence was insufficient to support his convictions. But we find that the testimony of the child victims, along with the other evidence presented by the state, was sufficient for a rational trier of fact to conclude beyond a reasonable doubt that Blevins was guilty of child molestation. See *Abdulkadir v. State*, 264 Ga. App. 805, 806 (1) (592 SE2d 433) (2003); *Greulich v. State*, 263 Ga. App. 552, 554 (2) (588 SE2d 450) (2003).

2. Blevins next contends that the trial court erred in not granting him a continuance to speak with a state witness. He notes that the state provided him with an inaccurate address for C. R., and that he was unable to contact him before trial. "It is well settled that the grant or denial of a motion for continuance is within the sound discretion of the trial court and will not be disturbed without showing an abuse of that discretion." (Footnote omitted.) *Singleton v. State*, 266 Ga. App. 795, 798 (4) (598 SE2d 80) (2004).

Here, the address the state provided for C. R. was the address in Chatham County where C. R. resided at the time of the incident involving Blevins. But at some point before the trial, C. R.'s family had moved to Effingham County. The state represented at trial, however, that the Chatham County address was the most current address they had for C. R. and it was the address the state used to issue a subpoena for C. R.'s appearance. C. R.'s mother testified that the subpoena was mailed to their Chatham County residence, but was forwarded by the United States Postal Service to their new address in accordance with the change of address form she had filed with the post office.

Moreover, the state voluntarily provided a list of its trial witnesses and opened up its files for Blevins's attorney to review even though Blevins never opted into reciprocal discovery under OCGA § 17-6-1 et seq. Because he failed to agree to reciprocal discovery, Blevins was not entitled to a continuing list of trial witnesses, although he was entitled to a list of witnesses who testified before the grand jury. *State v. Lucious*, 271 Ga. 361, 366 (4) (c) (518 SE2d 677) (1999). The witnesses who testified before the grand jury were listed on the indictment, which was provided to Blevins. That list does not

include C. R. Moreover, Blevins did not make his request for an opportunity to interview C. R. until the end of the second day of trial, although he was aware prior to trial that the address furnished by the state was no longer good. The trial court determined that the request was untimely and denied Blevins's request.

Based upon our review of the record, we find no abuse of discretion by the trial court in denying Blevins's request. See *Woodward v. State*, 262 Ga. App. 363, 366 (2) (585 SE2d 687) (2003). Cf. *Shields v. State*, 264 Ga. App. 232, 236 (1) (590 SE2d 217) (2003).

3. Blevins also argues that the trial court erred in denying his motion to exclude evidence of similar transactions. Blevins argues that the state exceeded the permissible use of such evidence by cross-examining him about this evidence. He also takes issue with the state's questioning regarding two letters he had authored that discussed castration as a method of addressing pedophilia.

> [I]n crimes involving sexual offenses, evidence of similar previous transactions is admissible to show the lustful disposition of the defendant and to corroborate the victim's testimony. The exception to the general rule that evidence of independent crimes is inadmissible has been most liberally extended in the area of sexual offenses.

(Citation omitted.) *Hostetler v. State*, 261 Ga. App. 237, 238 (1) (582 SE2d 197) (2003). Moreover, this court will not disturb a trial court's decision to admit such evidence absent an abuse of discretion. Id. The similar transaction evidence in this case was proffered to show intent, motive, course of conduct and the defendant's lustful disposition. We find no abuse of discretion in the admission of evidence regarding the four prior incidents involving Blevins and other young males. See *Barrett v. State*, 253 Ga. App. 357, 358 (559 SE2d 108) (2002); *Mullis v. State*, 267 Ga. App. 415, 416 (1) (599 SE2d 357) (2004).

Blevins objects, however, to his cross-examination regarding the similar transaction involving C. N. During his direct examination, Blevins testified regarding other similar transactions, denying that he had abused A. L. or that he had improperly touched M. C. W. He said that he pled guilty to the charges involving A. L. only because his lawyer advised him that his jail time would be reduced. On cross-examination, the prosecutor questioned Blevins regarding whether he had committed the other crimes introduced as similar transactions. In overruling the objection to this line of questioning the trial judge stated,

> Well, I've instructed the jury they can consider the evidence of these other allegedly similar events for certain limited

purposes. But if your client denies that these events occurred or attempts to down play them, then the jury is entitled to know what the truth is about these incidents because they can't consider them for any purpose if they did not occur.

We agree with the trial court that Blevins's testimony, despite his guilty plea, that he had not touched A. L. opened the door on cross-examination for the prosecutor to question him regarding the other prior crimes to which he pled guilty. "The State, like any other party, has the right to conduct a thorough and sifting cross-examination and to pursue the specifics of a topic [the defendant] introduced." (Citation omitted.) *Mitchell v. State*, 242 Ga. App. 177, 181 (4) (a) (529 SE2d 169) (2000).

Blevins also complains about the state's cross-examination questions regarding two letters he wrote discussing castration as a possible punishment or solution for child molestation. We note that these letters were discovered during the search of Blevins's house and were not specifically offered or listed as a part of the similar transaction evidence describing the prior crimes. Thus, these letters were not addressed in Blevins's motion in limine. Moreover, pretermitting the issue of whether this was a proper line of questioning, Blevins raised no objection at trial to the state's cross-examination regarding these letters or the subject of castration. Thus, he has waived his right to raise an appellate argument on this ground. *Rhode v. State*, 274 Ga. 377, 383 (13) (552 SE2d 855) (2001); *Graham v. State*, 269 Ga. App. 590, 593 (3) (604 SE2d 651) (2004).

4. Blevins asserts that the trial court improperly denied his motion to suppress the evidence seized from his house pursuant to the search warrant because the affidavit supporting the warrant lacked probable cause.

On appeal of the denial of a motion to suppress, the evidence is to be construed most favorably to the upholding of the findings and judgments made. Moreover, when reviewing an affidavit for a search warrant, we look at the totality of the circumstances to determine if there was probable cause to issue the search warrant.

(Citations and punctuation omitted.) *Walsh v. State*, 236 Ga. App. 558 (1) (a) (512 SE2d 408) (1999).

The search warrant in this case was obtained by Detective Linda Hansen of the Chatham County Police Department, who indicated that she had specialized training in investigating allegations of child molestation. The detailed, five-page affidavit sought a search for

"photographs of children, clothed and unclothed, all evidence of pornography; polaroid cameras; home video cameras and tape; computer and computer disks; children's underwear; any and all evidence of crimes of enticing a child for indecent purposes." The affidavit reported the allegations regarding the incidents involving both A. S. and C. R., noting that the incident involving C. R. occurred at Blevins's house. The affidavit also details Blevins's record of similar transactions and notes that prior searches in connection with those incidents turned up photographs of nude children, Polaroid cameras, child pornography, and children's underwear. In addition, the affidavit notes that M. G.'s mother had observed Polaroid cameras, video cameras and tapes, photo albums, a computer, computer games and children's clothing at Blevins's Chatham County residence.

Thus, the affidavit stated that Blevins had previously kept items related to his past sexual offenses, that one of the alleged incidents occurred at a house and that M. G.'s mother had observed certain of the items sought in the search warrant at the house. We find that considering the totality of the circumstances, the affidavit was sufficient to support a finding of probable cause to issue the warrant. See *Schwindler v. State*, 254 Ga. App. 579, 582 (1) (563 SE2d 154) (2002); *Walsh v. State*, 236 Ga. App. at 559 (1) (a). Compare *State v. Staley*, 249 Ga. App. 207, 210 (548 SE2d 26) (2001) (affirming grant of motion to suppress evidence found during search of defendant's residence where affidavit made no allegations of a link between the residence and any evidence of any alleged molestation).

5. Blevins further contends that the trial court erred in sentencing him as a recidivist to life without parole. The record indicates that the state sent Blevins a notice pursuant to OCGA § 16-6-4 (b) that because Blevins had previously been convicted of child abuse, the state intended to seek a life sentence. Under that statute, once the state serves notice of an intent to seek a life sentence, the defendant "shall be punished by imprisonment for not less than ten years nor more than 30 years or by imprisonment for life." OCGA § 16-6-4 (b). In addition, the state presented evidence indicating that Blevins had three prior felony offenses, and sought recidivist sentencing pursuant to OCGA § 17-10-7 (c). That statute mandates that a defendant convicted of a fourth felony "must . . . serve the maximum time provided in the sentence of the judge" and "shall not be eligible for parole until the maximum sentence has been served." OCGA § 17-10-7 (c).

In sentencing Blevins, the trial judge stated,

And my understanding of the law is that because the state gave the required written notice prior to trial I'm required to sentence the gentleman to the maximum because this is his

fourth felony. And my understanding of the Georgia law is that under our new constitution that sentence will be served without parole.

This statement was incorrect. Under OCGA § 17-10-7 (c), "the sentencing judge retains the discretion either to impose any sentence within the statutory mandatory minimum and maximum sentence range" or in this case, under OCGA § 16-6-4 (b), to impose a life sentence. (Footnote omitted.) *Scott v. State*, 248 Ga. App. 542, 546 (2) (545 SE2d 709) (2001). Although Blevins would be required under OCGA § 17-10-7 (c) "to serve the maximum time provided in the sentence of the judge, the sentence of the judge was by no means fixed." *Scott v. State*, 248 Ga. App. at 546 (2). Because the trial judge mistakenly believed that a life sentence was mandatory, he failed to exercise his discretion. This error cannot be considered harmless. Id. Thus, Blevins's sentence must be vacated and the case remanded for the exercise of the trial judge's discretion upon resentencing. Id.

*Judgment affirmed; sentence vacated and case remanded for resentencing. Ruffin, P. J., and Eldridge, J., concur.*

DECIDED NOVEMBER 9, 2004.

*Willie T. Yancey, Jr.*, for appellant.
*Spencer Lawton, Jr., District Attorney, Gregory M. McConnell, Assistant District Attorney*, for appellee.