**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 1, 2013**

# In the Court of Appeals of Georgia

A12A2001. MARRIOTT v. THE STATE.

BRANCH, Judge.

Shane Elizabeth Marriott was tried by a Hall County jury and convicted of five counts of theft by receiving stolen property[1] and one count of theft by deception.[2] She now appeals from the denial of her motion for a new trial, asserting that the evidence was insufficient to sustain her convictions for theft by receiving. Marriott further contends that the trial court committed plain error in instructing the jury on the elements of theft by receiving and in refusing to instruct the jury as to her sole defense on the charge of theft by deception. We find no reversible error and affirm.

---

[1] OCGA § 16-8-7 (a).

[2] OCGA § 16-8-3 (a).

On appeal from a criminal conviction, the defendant is no longer entitled to a presumption of innocence and we therefore construe the evidence in the light most favorable to the jury's guilty verdict. *Martinez v. State*, 306 Ga. App. 512, 514 (702 SE2d 747) (2010). So viewed, the record shows that on either June 4 or June 5, 2009, Marriott's parents contacted the Hall County Sherriff's Department and reported a burglary at their home. Specifically, Marriott's father told the responding officer that a number of guns were missing from his gun closet. The father subsequently told the investigator assigned to the case that he suspected his daughter, Marriott, had stolen the guns. His suspicions were based on the facts that Marriott and her parents were not on good terms at the time, that Marriott had a key to the house, and that she was the only person other than her father who knew where he kept the key to the gun closet. Additionally, on the day they discovered the guns missing, the parents had been contacted by their next-door neighbor who reported that she had seen a car resembling Marriott's parked in the parents' driveway while they were gone from the house. Marriott's father testified to the foregoing facts at trial, and also stated that he had neither given Marriott any of his guns nor permission to sell any of them.

Based on this information, the investigator and a second officer with the Hall County Sheriff's Department traveled to Marriott's residence in Gwinnett County to

interview her on June 18, 2009. During that interview, Marriott stated that she had no guns and that the only gun in the residence belonged to her boyfriend. After the officers asked for and received permission to search the apartment, she produced for them a bag of ammunition containing bullets of a number of different calibers. Marriott told the investigators that the ammunition belonged to her ex-husband, who owned a 9mm pistol. The bag, however, contained no 9mm ammunition, and Marriott's ex-husband testified at trial and denied any knowledge of the bag or the bullets therein.[3] Additionally, Marriott volunteered to the officers that the ammunition in the bag was similar in caliber to guns owned by her father.

After investigators found none of the missing guns in Marriott's apartment, they asked her if she had pawned or sold any guns recently. Marriott responded that she had not, noting that the only item she had pawned recently was a necklace.

Officers interviewed Marriott a second time on July 29, 2009, at which time she indicated that she did have some knowledge of the missing guns, but that she wanted to speak with her father before discussing the matter further with law enforcement. Marriott told the lead investigator that she needed until 1:00 p.m. that day to reach her

---

[3] The ex-husband further testified that during his marriage to Marriott, he owned only a single box of 9mm bullets.

father and that she would call the investigator after that time. Marriott never contacted the officer.

On the day after his second interview of Marriott, the investigator discovered that on May 4 and June 10, 2009, she sold a total of six guns to a gun shop located in Hall County. Five of those guns were among those reported stolen by Marriott's father. The proprietor of the store testified that Marriott told him that she had inherited the guns. He also explained that the store paid Marriott a total of $1,000 for the firearms, and that it then resold them to third parties. After learning that the guns had been stolen, the store repurchased them from its customers and returned the guns to law enforcement.

On July 31, 2009, the investigator learned that on May 27, May 28, and June 4, 2009, Marriott had sold eight guns to a gun shop in Gwinnett County. All of these guns were among those reported stolen from Marriott's father. An employee of the store testified at trial that, when she sold the guns, Marriott told him that they had belonged to her father, who had recently passed away.

After discovering that Marriott had sold 13 of her father's stolen guns, the investigator and another officer interviewed her for a third time. When confronted

with the evidence that she had sold the firearms to a third party, Marriott stated that her father had given her the guns.

Marriott was subsequently indicted in Hall County on 13 counts of theft by taking, 13 counts of theft by receiving, and one count each of burglary and theft by deception.[4] The trial court directed a verdict of acquittal on the eight counts of theft by receiving related to Marriott's sale of guns to the store in Gwinnett County, based upon the State's inability to prove venue as to those counts. The jury found Marriott not guilty of the burglary count and all 13 counts of theft by taking, but found her guilty of the five counts of theft by receiving based on her sale of guns to the Hall County gun store. The jury also found her guilty of theft by deception, based on her taking $1,000 from the Hall County store in exchange for the stolen guns. Marriott now appeals from the denial of her motion for a new trial.

1. We first address Marriott's claim that the evidence is insufficient to sustain her convictions for theft by receiving. "When we consider whether the evidence is sufficient to sustain a conviction, we ask whether, after viewing the evidence in the

___

[4] Marriott was both indicted and tried together with her then fiancé, Shane Michael Collins. Like Marriott, Collins was convicted of five counts of theft by receiving and one count of theft by deception, and was acquitted of all other charges. Collins, however, is not a party to this appeal.

5

light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation and punctuation omitted.) *Louisyr v. State*, 307 Ga. App. 724, 727-728 (1) (706 SE2d 114) (2011). As we have explained before,

> it is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence. So, if the record contains some competent evidence to prove each element of the crime[s] of which the defendant was convicted, even though that evidence may be contradicted, we must uphold the conviction.

(Citations and punctuation omitted.) *Ferguson v. State*, 307 Ga. App. 232, 233 (1) (704 SE2d 470) (2010).

Under Georgia law, "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner."[5] OCGA § 16-8-7 (a). The purpose of this offense is to punish a "person who buys or receives stolen goods, as distinct from the principal thief [of those goods]. An essential element of the crime of theft by receiving is that

---

[5] For purposes of the statute, "receiving" is defined as "acquiring possession or control or lending on the security of the property." OCGA § 16-8-7 (a).

the goods [be] stolen by some person other than the accused." (Citations and punctuation omitted.) *Thomas v. State*, 261 Ga. 854, 855 (1) (413 SE2d 196) (1992). Thus, if at trial there is presented "direct and uncontested evidence [that] identifies the defendant as the original thief, the defendant cannot be convicted of theft by receiving." (Punctuation and footnote omitted.) *Fields v. State*, 310 Ga. App. 455, 456-457 (1) (714 SE2d 45) (2011).

Relying on the foregoing law, Marriott argues that because the only evidence presented at trial showed she was the person who stole the guns, she cannot be convicted of receiving them. This argument, however, mischaracterizes the evidence of record and fails to take into account relevant law. That law shows that for an appellate court to overturn a conviction for theft by receiving on the grounds urged by Marriott, there must be "direct and uncontested evidence[,]" as opposed to merely circumstantial evidence, "identifi[ying] the defendant as the original thief." (Citation omitted.) *Phillips v. State*, 269 Ga. App. 619, 631 (10) (604 SE2d 520) (2004) (overturning conviction for theft by receiving where defendant admitted taking jewelry in question and pawning it, but defended on the grounds that he was the rightful owner). See also *Fields*, supra, 310 Ga. App. at 457 (1) (overturning conviction for theft by receiving where evidence showing that defendant stole the

7

computers at issue included "video and still photographs, clearly revealing [defendant's] unobstructed face and body from several angles, depicting him as the thief stealing the laptops") (footnote omitted). A conviction for theft by receiving will not be overturned, however, where, as here, neither party offers conclusive evidence to establish the defendant's identity as the thief and instead there is only "circumstantial evidence from which guilt of either theft by taking or receiving could be inferred." *Duke v. State*, 153 Ga. App. 204-205 (264 SE2d 721) (1980).

For example, in *Duke* this Court rejected the defendant's argument that as the evidence showed he had stolen the beer at issue, that evidence could not sustain his conviction for theft by receiving. The evidence showed that the beer was stolen from a tavern in which defendant had been seen several times on the night of the theft; the beer was found in defendant's car, which was parked behind the tavern; the policeman responding to the report of the crime saw "a person closely resembling defendant leave the area and run up the street"; and when he was apprehended, the defendant had a white, chalky substance on his pants similar to a substance found on the window sill where the thief had entered the tavern. Id. at 204. The defendant, however, denied breaking into the tavern and stealing the items. Noting that this evidence was only circumstantial "from which guilt of either theft by taking or receiving could be

inferred," we declined to overturn the conviction. Id. at 205. See also *Robinson v. State*, 215 Ga. App. 125, 126 (1) (449 SE2d 679) (1994) (upholding defendant's conviction for theft by receiving where there was "no uncontradicted evidence which demanded a finding that defendant was the thief" and instead "the evidence . . . was sufficient to establish defendant's guilt of either theft by taking or theft by receiving") (citation and punctuation omitted).

Moreover, and despite Marriott's assertions to the contrary, in a prosecution for theft by receiving stolen property, where the identity of the principal thief is either uncertain or unknown, "there is no burden on the State to prove that the thief was not the defendant." (Citation and punctuation omitted.) *Petty v. State*, 271 Ga. App. 547, 549 (1) (610 SE2d 169) (2005) (evidence sufficient to sustain defendant's conviction for theft by receiving included fact that defendant was found driving stolen car without an ignition key; car's steering column was damaged; screwdriver was found on seat next to defendant; when stopped by police, defendant claimed ownership of car; and there was no direct evidence identifying the car thief). Additionally, the State may charge a defendant with both theft by taking and theft by receiving the same property. Such charges may be brought in the alternative and the jury allowed to determine of which crime the defendant was guilty, depending on the State's ability

9

to carry its burden of proof with respect to the identity of the thief. *Rivers v. State*, 225 Ga. App. 558, 560 (1) (484 SE2d 519) (1997) (affirming defendant's conviction for theft by receiving where he had also been charged with, but not convicted of, theft by taking of the same property).

Here, the evidence identifying Marriott as the person who took the guns from her parents' house was neither direct nor conclusive. For example, the burglary with which Marriott was charged was reported on, and was believed to have occurred on, either June 4 or June 5, 2009. Testimony and documentary evidence, however, showed that Marriott sold at least three of the guns before those dates, on May 4, 27, and 28, 2009.[6] Additionally, although the parents' next-door neighbor testified that she saw a car resembling Marriott's parked in her parents' driveway, the neighbor could not state conclusively the date on which she saw the car or that the car was, in fact, Marriott's. Nor did the neighbor or any other witness testify that she actually saw Marriott at the house. And while Marriott's father testified that he believed she was the only person other than himself who knew where the keys to the gun closet were

---

[6] The evidence also showed that Marriott sold six of her father's guns on June 4, 2009.

located, he acknowledged that the keys were readily accessible in an unlocked cabinet located near the closet.

While this evidence, together with the evidence that Marriott had sold 13 of her father's guns, may well have sufficed to sustain a conviction for theft by taking, it did not demand her conviction for that crime. Indeed, the fact that the jury acquitted Marriott of the one count of burglary and thirteen counts of theft by taking with which she was charged shows that it had doubts about her identity as the person who stole the guns. Accordingly, in the absence of direct, conclusive evidence identifying Marriott as the initial thief of the guns, "the jury could infer that [s]he was guilty of theft by receiving." (Citations omitted.) *Petty*, 271 Ga. App. at 548 (1).

2. We now turn to Marriott's claims of error premised on the trial court's jury instruction on theft by receiving. As Marriott acknowledges, she did not object to the jury charge at trial. Thus, we review these claims only for "plain error." *State v. Kelly*, 290 Ga. 29, 32 (1) (718 SE2d 232) (2011); OCGA § 17-8-58 (b). And in determining whether a defendant can show plain error with respect to a jury charge, we ask:

> whether the instruction was erroneous, whether it was obviously so, and whether it likely affected the outcome of the proceedings. If all three of these questions are answered in the affirmative, the appellate court has the discretion to reverse if the error seriously affects the fairness,

11

integrity or public reputation of the proceedings below. Satisfying all four prongs of this standard is difficult, as it should be.

(Citations and punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a).

We find that Marriott cannot demonstrate plain error with respect to the charge of theft by receiving.

(a) Marriott contends that the court's charge on theft by receiving was incorrect as a matter of law because it failed to inform the jury that the crimes of theft by taking and theft by receiving were mutually exclusive, and therefore to convict Marriott of theft by receiving they had to conclude that someone other than Marriott stole the firearms at issue.

We agree with Marriott that, under Georgia law, where a defendant has been charged with both theft by taking and theft by receiving, and the evidence would support a conviction for either, the jury should be charged "that it can convict of either . . . , but not both." *Thomas v. State*, 261 Ga. 854, 856 (2) (413 SE2d 196) (1992). See also *Ingram v. State*, 268 Ga. App. 149, 152 (5) (601 SE2d 736) (2004). In light of the evidence in this case, therefore, the court should have so instructed the jury. Given that the jury acquitted Marriott of all thirteen counts of theft by taking, however, we cannot conclude that the trial court's failure in this regard constitutes harmful, much

12

less plain, error. In other words, we find it highly unlikely that the erroneous jury charge affected the outcome of Marriott's trial. See *Williams v. State*, 300 Ga. App. 839, 844 (3) (a) (686 SE2d 446) (2009) (an erroneous jury charge is harmless where "it is highly probable that it did not contribute to the verdict"). Compare *Thomas*, 261 Ga. at 855 (overturning defendant's conviction where trial court failed to charge the jury that he could not be convicted of both theft by taking and theft by receiving, and the jury found him guilty of both).

(b) Marriott also asserts that the trial court erred by failing to limit its instruction on the definitions of "deprive," "property of another," and "owner" to the crimes of theft by taking and theft by deception. Specifically, Marriott contends that the trial court should have informed the jury that these terms were irrelevant to the crime of theft by receiving, and that its failure to do so may have confused the jury about what evidence was sufficient to convict her for that crime. We disagree.

To determine whether a jury charge is likely to have misled or confused the jury about the elements of a particular crime, we must consider the charge as a whole, reading all of its parts in conjunction with each other. *Daniel v. State*, 296 Ga. App. 513, 518 (3) (675 SE2d 472) (2009). And "[w]here a charge as a whole substantially presents issues in such a way as is not likely to confuse the jury even though a portion

13

of the charge may not be as clear and precise as [it] could be . . . , a reviewing court will not disturb a verdict amply authorized by the evidence." (Footnote omitted.) Id.

Marriott is correct that the terms "deprive," "property of another," and "owner," as defined and used in Georgia's theft statute, apply to the crimes of theft by taking and theft by deception but not the crime of theft by receiving. See OCGA § 16-8-1 (definitions); OCGA § 16-8-2[7] (theft by taking); OCGA § 16-8-3 (theft by deception); OCGA § 16-8-7 (theft by receiving). And while the jury was charged on these definitions immediately after hearing the charge on theft by receiving, to which they did not apply, these definitions immediately preceded the charges on theft by taking and theft by deception, to which they did apply. Accordingly, reading the charge as a whole we do not find that a juror would have been confused as to the evidence necessary to convict Marriott of theft by receiving. The trial court correctly charged the jury on the elements of theft by receiving, instructed that the State bore the burden of proving every element of the crime beyond a reasonable doubt, and sent the indictment out with the jury. "Taking the charge as a whole, we conclude that a jury

_____

[7] OCGA § 16-8-2 provides: "A person commits the offense of theft by taking when he unlawfully takes or, being in lawful possession thereof, unlawfully appropriates any property of another with the intention of depriving him of the property, regardless of the manner in which the property is taken or appropriated."

14

of average intelligence would not have been confused by the charge, and that the trial court's charge properly set forth the basis on which the jury was authorized to convict" Marriott of theft by receiving. (Punctuation and footnote omitted.) *Clemens v. State*, 318 Ga. App. 16, 20 (2) (733 SE2d 67) (2012).

3. Marriott's sole defense was premised on a claim of right, namely that her father had given her the guns. Although the trial court charged the jury that claim of right was a defense to the crimes of theft by taking and theft by receiving, it did not specifically instruct the jury that claim of right was also a defense to the charge of theft by deception. Marriott did not object to this failure at trial, but on appeal she contends that it constitutes plain error. We find no such error.

Marriott is correct that a claim of right is a defense to the crime of theft by deception and that the trial court should have so instructed the jury. *Stratacos v. State*, 312 Ga. App. 783, 785 (1) (720 SE2d 256) (2011); OCGA § 16-8-10. Marriott cannot show, however, that this error affected the outcome of trial. Had the jury found that Marriott's claim of right was valid – i.e., that her father had given her the guns or that she believed he had given her the guns – it would have been obligated, under the instructions given by the trial court, to find that she was not guilty of the charges of theft by receiving. Given that it found her guilty of those crimes, however, we must

15

conclude that the trial court's error did not contribute to the guilty verdict on the crime of theft by deception. See *Drake v. State*, 274 Ga. App. 882, 883 (1) (619 SE2d 380) (2005) (evidence that, despite his knowledge that tools belonged to someone else, defendant represented himself as owner of tools when he sold them to pawn shop was sufficient to support his conviction for theft by deception).

*Judgment affirmed. Miller, P. J., and Ray, J., concur.*